## J. L. SHELLENBERGER v. F. T. RANSOM ET AL.

[FILED JANUARY 2, 1891.]

1. **Descent.** M. S. and J. L. S., sister and brother, were, as tenants in common, possessed of an estate which had descended to them from their mother. L. S., their father, for the purpose of possessing the share and interest of the said M. S. in her estate, willfully murdered her, and afterwards executed and delivered a deed for the purpose of conveying the said share and interest to the defendants in error. In an action between the said grantees and J. L. S. for the partition and sale of said estate,

*held*, that by the letter of the law, and leaving out of view the fact of the murder of M. S. by L. S., upon her death, without issue, he would take her estate by inheritance.

2. ——: DECEDENT MURDERED BY HEIR. Where the death of M. S. was caused by L. S. and by willful murder, he did not take her estate, which descended to J. L. S.

ERROR to the district court for Otoe county. Tried below before CHAPMAN J.

*O. P. Mason*, for plaintiff in error, cited on the first point discussed in the opinion: *Perkins v. Simonds*, 28 Wis., 90; *Maffit v. Clark*, 6 W. & S. [Pa.], 260; Coke, Litt., 12a; 2 Black., Com., 243; *Butler v. King*, 2 Yerg. [Tenn.], 116; *Shippon v. Izard*, 1 S. & R. [Pa.], 223; *Gardner v. Collins*, 2 Pet. [U. S.], 58; 5 Hilliard, Real Prop., 207; *Baker v. Chalfant*, 5 Whart. [Pa.], 477; *Torrey v. Shaw*, 3 Edw. Ch. [N. Y.], 362. As to the second point: *Riggs v. Palmer*, 115 N. Y., 506, and the following maxims: *Crimen omnia ex se nata vitiat*, 5 Hill [N. Y.], 523, 531; *Jus ex injuria non oritur*, 4 Bingh., 639; Broom's Leg. Max., 738, note; *Jus descendit, et non terra*, Coke, Litt., 345.

*John C. Watson, Frank T. Ransom*, and *Geo. D. Scofield, contra:* The question of descent is governed by sec. 33, ch. 23, Comp. Stats., not by sec. 30. Attainder, forfeiture, etc., were long since abolished. (Williams, Real Property, 126; State Const., art. 1, secs. 3, 16; Federal Const., art. 1, sec. 9, subdiv. 3.) As to the second point discussed in the opinion: *Owens v. Owens*, 100 N. Car., 240.

COBB, CH. J.

The defendants in error on December 28, 1887, made their complaint in the district court of Otoe county, setting up that on April 28, 1881, Elijah Gibson, then the owner

of the northeast quarter of section 5, township 7 north, of range 14 east, of the 6th P. M, in Otoe county, deeded and conveyed the same, in fee simple, to Emma Shellenberger, the wife of Leander Shellenberger, and the mother of Maggie Shellenberger and Joseph Lee Shellenberger, then infants and minors; that subsequently, and at no long period, the precise date of which does not appear, Emma Shellenberger died intestate, seized of said premises, leaving as her sole heirs at law her husband and children, and that upon her death the land descended to her husband during his lifetime and that he became the tenant by his right of curtesy, with the remainder after his death to his said children; that on April 29, 1886, the said Maggie died intestate, without issue, leaving as her only heir her father, who thereupon, with the surviving son and brother, became tenants in common of said premises, subject to the life estate of the father; that subsequently on May 3, 1886, Leander Shellenberger and Miranda, his wife, by warranty deed conveyed to the defendants in error their interest in the premises, being the life estate of Leander and one undivided half of the remainder; that on July 23, 1887, Leander departed this life, and the defendants in error and Joseph Lee Shellenberger became the owners as tenants in common, each owning one undivided half of said land.

The defendants in error further alleged that Joseph Lee Shellenberger was a minor over the age of fourteen years; that the enjoyment of the premises in common was liable to difficulties and controversies, and was attended with great inconveniences to them; that their co-tenant could not contract or legally consent to the making of improvements, and for the same reason was incapable of consenting to an amicable partition of the premises or of selling his interest therein to them or of purchasing their interest himself.

The plaintiff in error was made defendant in the court below, judgment was asked confirming the shares in the

premises to the parties as set forth, and for partition thereof, or, if the same could not be equitably divided, that it be sold and the proceeds divided according to the respective rights of the parties.

On March 13, 1888, on application of the guardian of the minor defendant, O. P. Mason, Esq., was appointed guardian *ad litem* for the defendant with leave to answer, and answered, denying each and every allegation not expressly admitted, but admitting that the premises were conveyed to Emma Shellenberger as alleged; that she died intestate seized of the premises, leaving as her sole heirs her children and her husband, as alleged, to whom the land descended, with life estate in the husband, who became tenant by curtesy with remainder after his death to the children as alleged, and further setting up that on or about the 27th day of April, 1886, the said Leander Shellenberger, willfully, feloniously, and of his deliberate premeditated malice, did kill and murder his daughter, Maggie Shellenberger, and she then and there died intestate and without issue, leaving her father, Leander Shellenberger, who murdered her for the purpose of possessing himself of her estate and title in fee simple to the land aforesaid, and said plaintiffs claim that by and through said murder and the death of said Maggie Shellenberger the said Leander Shellenberger became a tenant in common of said premises with the survivor, Joseph L. Shellenberger; that on or about the 1st day of May, 1886, the said Leander Shellenberger was arrested and charged with the murder of the said Maggie Shellenberger; that the said complainants herein, well knowing of the facts, and being attorneys at law, undertook the defense of said Shellenberger, and to secure them for their said services, the said Leander Shellenberger did, on or about the 3d day of May, 1886, with his wife, Miranda Shellenberger, duly convey to the plaintiffs, by warranty deed duly executed, their interest in said premises, being the estate, as claimed by the complainants,

Shellenberger v. Ransom.

for life of Leander Shellenberger and one undivided one-half of the remainder; that shortly thereafter the said Leander Shellenberger was indicted and charged with the murder of said Margaret Shellenberger, and such proceedings were had in said cause in the state of Nebraska against Leander Shellenberger, indicted for the murder of his daughter, the said Maggie Shellenberger; but at the November term of the district court sitting within and for Otoe county, in she year 1886, he was convicted and sentenced for said murder, which sentence and judgment of the court remains unreversed in said court; that afterwards, and on or about the 23d day of July, 1887, the said Leander Shellenberger was taken from the jail of Otoe county, while under the sentence of death, and by a mob hanged, and the defendant herein answering charges and avers the fact to be, that the said plaintiffs in said petition, at the time they took a conveyance of said premises from said Leander Shellenberger and wife, well knew the facts, that the said Leander Shellenberger came to the said lands by the murder of his child, Maggie Shellenberger, and well knew all the proceedings in said court, resulting in his conviction, the judgment and sentence; and this defendant herein answering says, that the said Leander Shellenberger could acquire no estate or interest or right or title in and to the lands in controversy, by and through his act of the murder of Maggie Shellenberger; and this defendant in further answering says, that the said Leander Shellenberger did willfully, maliciously, and of his premeditated and deliberate malice, kill and murder the said Maggie Shellenberger, and cut her throat from ear to ear, for the sole purpose of removing her from this life, that he might inherit the lands which descended to her by and through the death of her mother; that the defendant in further answering says, that it is contrary to the law of the land that any should be permitted to come to an estate or an inheritance by their willful act of murder; and the said defendant in further

answering says, that the said Leander Shellenberger could take no estate from the said Maggie Shellenberger, whose death he had compassed and produced, and that he took no estate to himself, and conveyed none to the said plaintiffs herein, and the said plaintiffs acquired no right, title, or interest in and to the said estate, by and through the death of said Maggie Shellenberger, caused by said Leander Shellenberger as hereinbefore alleged.

The guardian asked a decree that Leander Shellenberger took no estate by the death of the daughter, but that her estate descended to the brother, the minor defendant in this suit.

To this answer the plaintiffs' demurrer was sustained, and the following decree was rendered:

"This cause came on this 24th day of March, 1888, to be heard upon the petition, answer, and demurrer of the plaintiffs to the answer of the defendant, made by O. P. Mason as guardian *ad litem* for the defendant Joseph L. Shellenberger, and the same is here argued and submitted to the court, and the court being well advised in the premises doth sustain said demurrer, to which action of the court the defendant excepts. And the said defendant, by his guardian *ad litem*, elects to stand on his answer, and the court doth find in favor of the plaintiff, and that the plaintiffs are the owners in fee simple and the undivided one-half of the following described lands and premises, to-wit: the northeast quarter of section 5, in township 7 north, range 14 east of the 6th P. M., according to government survey, the said premises lying and being situated in Otoe county, Nebraska, and the defendant, Joseph L. Shellenberger, is the owner in fee simple of the other undivided one half of said premises, and the plaintiffs are entitled to the partition of said premises. It is therefore considered, adjudged, and decreed by the court that the shares of each of said parties and their interests respectively in said lands be and the same are hereby confirmed,

and that the partition be made accordingly. It is further ordered that Lewis Dum, M. E. Campbell, C. W. Seymore be and they are hereby appointed to make the partition of said real estate and premises into the requisite number of shares and report the same to the present term of this court. And this cause coming on further to be heard on the report of the referees heretofore appointed herein, on the motion of the plaintiffs to confirm the same, and it appearing to the court that the said referees took and subscribed to the oath required by law, and the court having carefully examined the said report, and it appearing therefrom that the partition of said real estate cannot be made without great prejudice to the owner thereof, and the court being satisfied with the report, the same is hereby by the court confirmed and ordered to be entered of record, to all of which the defendant excepts. It is further ordered, adjudged, and decreed by the court that the said referees proceed to sell said premises at public sale, upon execution, for cash, at the east front door of the court house in Nebraska City, in Otoe county, Nebraska, and the said referees, before proceeding to sell said real estate, to give security in the sum of $500, to be approved by the court or the judge thereof, conditioned for the faithful discharge of their duties, and the said referees be required to make report of their doings into court, to all of which defendant, by his guardian *ad litem*, excepts and prays an appeal to the supreme court, which is allowed, and the amount of the supersedeas bond to stay proceedings thereon is fixed at the sum of $300, and forty days is hereby allowed to reduce his exceptions to writing."

The petition in error sets up:

I. The court erred in sustaining the plaintiffs' demurrer.

II. In finding that the plaintiffs were the owners in fee of an undivided one-half of the premises, and were entitled to a partition of the same.

III. In confirming a share to the plaintiffs.

IV. In appointing referees to make partition.

V. In confirming the report of referees.

VI. In ordering a sale of the premises.

Two questions are presented and argued in the briefs of the plaintiff in error.

First, whether, upon the death of Maggie (Margaret) Shellenberger, eliminating all considerations of the cause or manner of her death, the grantor of plaintiffs in the court below could take her estate in the lands in controversy by inheritance?

Counsel for the plaintiff in error contends that he could not, for the reason that the land, as counsel claims that the petition shows, came from Gibson, the father of Emma Shellenberger, deceased, who gave or devised the land to his daughter, and which, upon her death, descended to her two children, and that the estate being ancestral Leander Shellenberger did not take it; that it did not descend to him on the death of her child, but descended to the surviving child. But it is to be observed that it cannot be gathered from the words of the petition that the land in controversy was either given or devised by Gibson to his daughter, or that it was an ancestral estate, but it does appear, upon the date named, that Elijah Gibson, then and before that time the owner of the land, by deed duly conveyed the same to his daughter Emma in fee simple. The title then, as I view it from the pleadings, commences with Emma Shellenberger, who must be presumed to have derived the same by purchase from Elijah Gibson, whom it inferentially appears was her father. I am, therefore, of the opinion that section 33 of chapter 23, Comp. Stats., (1887) is not applicable to this case, for the reason that the estate in controversy did not come to the intestate by descent, devise, or gift of some one of her ancestors, and it is therefore not material to inquire whether said section of statute is applicable to any case not involving the claim of kindred of the half blood, but that the case comes within the

provision of section 30 of said chapter, which provides that "When any person shall die seized of lands, tenements, or hereditaments, * * * they shall descend, subject to his debts, in the manner following: * * * Second—If he shall have no issue his estate shall descend to his widow during her natural lifetime, and, after her decease, to his father, and if he shall have no issue nor widow, his estate shall descend to his father."

Upon the face of the law and of the relation of Leander Shellenberger to the decedent, and without regard to or consideration of the second ground of defense set up in the answer, Leander Shellenberger would, upon the death of Margaret (Maggie) Shellenberger, take her estate in the lands by inheritance.

The second question is presented by the defendant in the court below in the following words: "That on or about the 27th day of April, 1886, the said Leander Shellenberger willfully, feloniously, of his deliberate, premeditated malice, did kill and murder his daughter, Maggie Shellenberger, and she then and there died intestate and without issue, leaving her father, Leander Shellenberger, who murdered her for the purpose of possessing himself of her estate and title in fee simple to said land.

The question presented by this clause of the answer is thus tersely stated by counsel for the plaintiff in error in his brief: " Can a man realize substantial benefit from his own willful acts of deliberate and premeditated murder ? Can he legally hold and enjoy the fruits of his crime?" This question was decided by the court of appeals of the state of New York in the case of *Riggs v. Palmer*, 115 N. Y., 506; 5 Lawyers' Reports, 340.   The facts of that case, briefly stated, were these: Francis B. Palmer made his last will and testament, in which he gave small legacies to his two daughters, Mrs. Riggs and Mrs. Preston, the plaintiffs in said action, and the remainder of his estate to his grandson, the defendant, Elmer M. Palmer, subject to the support of

Susan Palmer, his mother, with a gift over to the two·
daughters, subject to the support of the mother, in case
Elmer should survive him and die under age, unmarried
and without issue. The testator at the date of his will
owned a farm and considerable personal property. He
was a widower, and thereafter, in March, 1882, he was mar-
ried to Mrs. Breese, with whom he entered into an ante-
nuptial contract in which it was agreed that in lieu of
dower, and all other claims upon his estate, in case she sur-
vived him, she should have her support upon his farm
during her life, and such support was expressly charged
upon the farm. At the date of the will, and subsequent
to the death of the testator, Elmer lived with him as a
member of his family, and at his death was sixteen years
of age. He knew of the provisions made in his favor
in the will, and that he might prevent his grandfather·
from revoking such provisions, which he had manifested
some intention to do, and to obtain the speedy enjoyment·
and immediate possession of his property, he willfully
murdered him by poison.

It appears that the will was duly proved and admitted
to probate, and an administrator with the will annexed
appointed. Thereupon the action was brought to enjoin·
the administrator from disposing of the personal property
of the decedent (testator) to the defendant (Elmer Palmer),
and to declare him not entitled to the real estate under the·
will, upon the ground that he, being by and under the will
practically constituted universal devisee and legatee of·
Francis B. Palmer, murdered the testator, who was his·
grandfather, to get immediate enjoyment of the property
himself, and to prevent a revocation of the will. The
general term of the supreme court having rendered a judg-
ment for the defendant the cause was taken to the court of
appeals. The majority of the court, in an exhaustive opin-
ion by Judge Earle, reversed the judgment of the supreme·
court and directed a judgment to be entered enjoining El-

mer Palmer and the administrator from using any of the personal or real estate left by the testator for Elmer's benefit; that the devise and bequest in the will to Elmer be declared ineffective to pass the title to him ; that by reason of the crime of murder committed upon the grandfather he is deprived of any interest in the estate left by him.

In entering upon the argument which led to the above conclusion the writer of the opinion says: " The defendants say that the testator is dead'; that his will was made in due form, and has been admitted to probate, and that therefore it must have effect according to the letter of the law. It is quite true that statutes regulating the making, proof, and effect of wills, and the devolution of property, if literally construed, and if their force and effect can in no way and under no circumstances be controlled or modified, give this property to the murderer. The purpose of those statutes was to enable testators to dispose of their estates to the objects of their bounty at death and to carry into effect their final wishes, legally expressed, and in considering and giving effect to them, this purpose must be kept in view. It was the intention of the law-makers that the donees in a will should have the property given to them, but it never could have been their intention that a donee who murdered the testator, to make the will operative, should have any benefit under it. If such a case had been present to their minds, and it had been supposed necessary to make some provision of law to meet it, it cannot be doubted that they would have provided for it.

" It is a familiar canon of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers."

To these propositions the opinion cites many authorities of great weight and general acceptance. This opinion cites

and discusses the case of the *New York Mutual Life In-surance Company v. Armstrong*, 117 U. S., 599, which case is also cited by counsel for the plaintiff in error.

The facts of that case may shortly be stated as follows: One Hunter, partly in person and partly through one John M. Armstrong, effected an insurance, and received a policy of insurance in the New York Mutual Life Insur-ance Company upon the life of the said John M. Arm-strong, in whose life he claimed to have an interest growing out of certain partnership relations. Within six weeks after the policy was issued Armstrong was attacked at night in a street in Camden, New Jersey, and received blows on his head which fractured his skull, from which he died two days afterward. Suspicion fell upon Hunter as the perpetrator or instigator of the attack. He was ac-cordingly arrested, was indicted, and tried for the murder of Armstrong; he was convicted, sentenced to death, and hanged. The suit was brought against the life insurance company, removed to the circuit court of the United States, and brought upon error to the supreme court, where the judgment against the insurance company was reversed. In the opinion the court said (p. 600), " But independently of any proof of the motives of Hunter in obtaining the policy, and even assuming that they were just and proper, he for-feited all rights under it when, to secure its immediate payment, he murdered the assured. It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he has feloniously taken. As well might he recover insurance money upon a building that he had willfully fired."

The principle of these cases, especially that of *Riggs v. Palmer*, is applicable to the case at bar; their analogies are immediate and certain. As I have already stated, in effect, the relation of Leander Shellenberger to Mar-garet Shellenberger was such that the law, upon her death

*prima facie*, gave him her estate. But he was a man of full age, while she was an infant of tender years. In the ordinary course of nature she would outlive him; she also would grow up to womanhood, marry, and have issue who would become entitled to her estate upon her death, to the exclusion of her father. To prevent this and to get the title and possession of her estate at once, according to the allegations of the answer demurred to, he murdered her. Had her death been the result of natural causes or a cause of which he was innocent, he would have taken her estate by inheritance; had he been allowed to take it at her death, caused as it was, he would have taken it by purchase rather than by inheritance, and at a price of such enormous iniquity that the mind shudders at its mention —the murder of his own motherless daughter. I quite agree with the court of appeals, that had it been in the mind of the framers of our statute of descents that a case like this would arise under it they would have so framed the law that its letter would have left no hope for the obtaining of an inheritance by such means.

The holding that a person cannot take by inheritance the estate of a person whom he murders for the purpose of removing the life that stands between him and the estate is sustained by many maxims of the law and considerations of sound policy, and is not in violation of the provisions of the constitution of the United States or of this state against bills of attainder, and that no person shall be deprived of property without due process of law. Were it enacted into a statute it would take no one's property from him nor work corruption of any one's blood, but would only stand in the way of taking an estate as a reward for the commission of crime.

The case of *Owens v. Owens*, 100 N. C., 240, was where a widow was convicted upon a charge of being accessory before the fact to the murder of her husband. She afterwards brought suit to have her dower assigned in the real

property left by him. The supreme court, reversing the judgment below, held that, notwithstanding her criminal participation in her husband's death, she was entitled to be endowed of a share of his estate. The reason given by the court in the opinion is that the statute having provided but one cause for which a widow should be barred of her dower, which was where she should commit adultery and not be living with her husband at his death, her right to dower is not affected by the fact that the intestate died at her hands or through her procurement. I agree with the New York court of appeals, which also reviewed this case in the opinion in *Riggs v. Palmer, supra,* in an unwillingness to assent to the doctrine of this case.

Counsel for defendants in error in their brief say : "As the appellees (defendants in error) are *bona fide* purchasers of the property in controversy they cannot be affected by any wrongful acts, if any, of their grantor." As I view the case, Leander Shellenberger not taking the estate of Margaret in the land on account of his having murdered her in order to obtain it, he was only possessed of a life estate in the land, which estate he conveyed to the defendants in error, and which estate terminated upon his death by violence, as stated in the answer. No question of *bona fides* therefore arises. On the other hand, whether the defendants in error, at the time they took the conveyance of the land in question from Leander Shellenberger, knew of his crime and its motive, is not deemed material and will not be considered.

The judgment of the district court is reversed, and judgment will be entered in this court that the said Leander Shellenberger took no estate from the said Margaret (Maggie) Shellenberger, but that the said estate upon her death in manner and by the means stated, descended and passed to the said Joseph Lee Shellenberger and remains.

JUDGMENT ACCORDINGLY.

THE other judges concur.