*MALINDA DEEM ET AL. v. THOMAS MILLIKIN ET AL.

ONE WHO MURDERS HIS ANCESTOR DOES NOT FORFEIT HIS INHERITANCE.

The statute of descents provides in clear terms that where one dies intestate and seized in fee of lands, they shall descend and pass to the children of such intestate; and the courts cannot, upon considerations of policy, so interpret the statute so as to exclude from the inheritance one who murders such intestate, there being no corruption of blood or forfeiture of estate for felony.

Error to the Common Pleas Court of Preble county.

The defendants in error, by their answers and cross-petitions filed in the court of common pleas, allege that Caroline Sharkey died intestate, January 11, 1889, and seized in fee of certain real estate in said county, leaving her son, Elmer L. Sharkey, her sole heir at law; that thereafter, said Elmer L. Sharkey executed to them several mortgages to secure the payment of certain promissory notes, their cross-petitions containing appropriate averments as to the existence of the notes and mortgages, and for the assertion of a lien upon said real estate by virtue thereof.

Answering these cross-petitions, the plaintiffs in error, who are brothers and sisters of said Caroline Sharkey, deceased, admitting that said Elmer L. Sharkey was her son and only child, and that she died intestate, allege that on or about January 11, 1889, said Elmer L. Sharkey murdered her for the purpose of succeeding to the title to said real estate, and having by due process of law, been convicted of said crime, he was hanged therefor December 19. 1890; wherefore they allege that said real estate did not descend to him.

In the court of commmon pleas demurrers to these answers were sustained, and distribution was ordered in favor of said mortgagees. The plaintiffs in error seek the reversal of that judgment.

SHAUCK, J.

The judgment under review is unquestionably right if the terms used in the statute of descents should, in all cases, receive their plain and natural meaning. Mrs. Sharkey died intestate and seized in fee of the lands in controversy. There is neither condition nor exception in the statute which provides that they should descend to her son.

But recent decisions by courts of much respectability affirm that, in cases of this character, there should be judicially added to statutes such conditions or provisions as may be necessary to avert results believed to be inconsistent with the legislative conscience, and, therefore, foreign to the legislative intent. Riggs v. Palmer, 115 N. Y., 506; Shellenberger v. Ransom, 47 N. W. Rep., 700. In Riggs v. Palmer, the court reached the conclusion that where a beneficiary under a will, in order to prevent a revocation of the provision in his favor, and to obtain

*This judgment was affirmed by the Supreme Court, on the reasoning in this case, 53 Ohio St., 668. For common pleas decision, see 11 Dec. Re., 492. The circuit decision, as to construction of statutes, is cited as authority in Ives v. McNicoll, 5 Circ. Dec., 555, and in the same case in common pleas court, 4 Dec., 75.

speedy possession of the property, wilfully murders the testator, such beneficiary,. by reason of his crime, takes no interest in the estate of his victim. The point held in Shellenberger v. Ransom, *supra*, is that if the owner of lands is murdered by one whom the statute designates as his successor in title, the crime intercepts the transmission of the property according to the terms of the statute. In neither case is a distinction attempted between devolution of title by devise and devolution by statute; but both disapprove Owens v. Owens, 100 N. C., 240, where it was held that a widow convicted as accessory before the fact to her husband's. murder was, nevertheless, entitled to dower in his lands according to the terms of the statute. The case of Riggs v. Palmer, *supra*, was decided by a divided court, and contrary to the judgment of the supreme court; and Shellenberger v. Ransom, *supra*, is believed to be now under reconsideration by the Supreme Court of Nebraska. We are without authoritative decision in our own state, and there is not found elsewhere such concurrence of opinion as would properly excuse us from a consideration of the principles upon which the rights of these parties should be determined.

It must be admitted that the most careful examination of Riggs v. Palmer, *supra*, fails to discover any clearly stated and clearly applicable principle justifying the decision. The spirit of fearless inquiry was exorcised early in the opinion, when every one contemplating a conclusion different from that reached by the majority, was warned that if he should persevere, it would be disparagingly said of him "*qui haeret in litera haeret in corticc.*" The conclusion derives no support from the rule quoted from Bacon's Abridgement: "By an equitable construction, a case not within the letter of the statute is sometimes holden to be within the meaning, because it is within the mischief for which a remedy is provided."

The statute of descents neither recognizes a mischief nor provides a remedy. It is a legislative declaration of a rule of public policy. With respect to remedial statutes, the rule quoted has frequent and salutary operation. The mischief and the remedy indicate the intention of the legislature, and guide the court in giving it effect. But the rule affords no warrant for adding an important exception to a statute which, in clear language, defines a rule of public policy. Even in the consideration of remedial statutes, courts should be guided by the maxim "*index animi sermo,*" and the interpretation should be consistent with the language employed. Knowledge of the settled maxims and principles of statutory interpretation is imputed to the legislature. To the end that there may be certainty and uniformity in legal administration, it must be assumed that statutes are enacted with a view to their interpretation according to such maxims and principles. When they are regarded, the legislative intent is ascertained. When they are ignored, interpretation becomes legislation in disguise. The well-considered cases warrant the pertinent conclusion that when the legislature, not transcending the limits of its power , speaks in clear language upon a question of policy, it becomes the judicial tribunals to remain silent. Hadden v. Collector, 5 Wall., 107; Hyatt v. Taylor, 42 N. Y., 259; In re Powers, 25 Vt., 265; State v. Liedtke, 9 Neb., 468; Plank Road Co. v. Woodhull, 25 Mich., 99; Jewell v. Weed, 18 Minn., 272; Woodbury & Co. v. Berry, 18 O. S., 456; Bruner v. Briggs, 39 O. S., 478; Kent v. Mahaffey, 10 O. S., 204. The decision in Riggs v. Palmer, *supra*, is the manifest assertion of a wisdom believed to be superior to that of the legislature upon a question of policy. Chief Justice Redfield, *in re* Powers, observes: "It is scarcely necessary, we trust, at this late day to say that the judicial tribunals of the state have no concern with the policy of legislation."

There should be no difficulty in distinguishing this case, in which rights are vested by statute, from those cases in which the rights asserted have no foundation other than the fraudulent or unlawful conduct of a contracting party, nor from those in which attempts are made to use the process of courts for fraudulent purposes.

In a state where, by organic law, the powers of government are located, and the modes of their exercise defined, and the judicial is carefully distinguished from the legislative power, there should be no assumption of judicial infallibility.

No inference favorable to the plaintiffs in error can be drawn from the supposed familiarity of the lawmakers with the principles of the civil law where, by an exception, they who murder their ancestors are excluded from the inheritance. The natural inference is that when they incorporated the general rule into the statute and omitted the exception, they intended that there should be no exception to the rule of inheritance prescribed.

If we felt at liberty to follow the example of the court of appeals of New York and to imagine the legislators who enacted this statute summoned to our presence, and answering as "upright and reasonable men"—that is, of course, such men as we are—"whether they intended to comprehend this case," we might receive an affirmative answer accompanied by suggestive reasons. The same rule which we are asked to apply to the slayer and his mortgagees, if it be sound, should, out of respect for the logic of the law in another case, be applied to the innocent claiming to inherit through him. One who cannot inherit cannot be a medium of inheritance.

The provisions of the twelfth section of the bill of rights may have suggested the deliberate comprehension of this case within the provisions of the statute. "No conviction shall work corruption of blood or forfeiture of estate." Certainly the construction claimed by counsel for the plaintiffs in error would not involve a forfeiture of estate, for their contention is that no estate vested in the slayer. But the lawmakers may have entertained most serious doubt if they contemplated the change in the statute which we are now asked to make, whether it would not contravene the constitutional provision as to the corruption of blood. Corruption of blood and forfeiture of estates were, at common law, the consequences of attainder. Blackst. Com. 4, p. 381. An attainted person can "neither inherit lands or other hereditaments from his ancestors, nor retain those he is already in possession of, nor transmit them by descent to any heir; but the same shall escheat to the lord of fee, subject to the king's superior right of forfeiture; and the person attainted shall also obstruct all descents to his posterity, wherever they are obliged to derive title through him to a remote ancestor." *Id*, 388. Since the legislature did not undertake to create the supposed exception to the statute of descents, we are not required to determine whether it would have been repugnant to the constitutional provision referred to. But in the field of speculation to which Riggs v. Palmer, *supra*, invites, this provision suggests grave reasons why a legislative body, careful to respect both the letter and the spirit of the constitution, should hesitate to attach to felonies any of the consequences of the corruption of blood.

The judgment is affirmed.

J. W. King, for plaintiff in error.

Thos. Milliken, Foos & Fisher, and Marsh & Marsh, for defendants in error.