### HARRISON et al. v. MONCRAVIE.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1920.)

No. 5421.

1. Courts ⬡489(13)—Federal court has jurisdiction to protect rights of nonresident heir to property under administration.

Federal courts have jurisdiction of a suit by a nonresident of the state against the resident administrator and heir to recover an interest in the real property and for partition thereof, though that property was under administration in the probate court of the state; but the federal court will not interfere with the proper administration of the estate.

2. Courts ⬡262(3)—Federal jurisdiction in equity is that of English chancery in 1789.

The jurisdiction in equity of the courts of the United States is like that of the High Court of Chancery of England at the time of the passage of the Judiciary Act of 1789, and includes the adjudication and enforcement of claims of citizens of other states to interests in estates of decedents in the possession of administrators or executors engaged in the administration thereof.

3. Courts ⬡489(13)—Subjecting Indian lands to probate jurisdiction of Oklahoma courts does not affect federal court's jurisdiction to partition.

Act April 18, 1912, §§ 3, 6, subjecting property of deceased incompetent allottees of Indian lands in probate matters to the jurisdiction of county courts of Oklahoma, and authorizing partition thereof by any court of competent jurisdiction under the laws of Oklahoma, subject to approval by the Secretary of the Interior, does not deprive a federal court of jurisdiction to decree partition of such lands at the suit of a nonresident heir

before proceedings therefor were instituted in the state courts, under Rev. Laws Okl. 1910, §§ 6463, 6464, 6468, 6469.

**4. Courts ⊗═260—Indians ⊗═27(2)—Inability to enforce judgment does not affect jurisdiction of inferior federal courts.**

Though the Supreme Court, whose jurisdiction is fixed and limited by the Constitution, has no jurisdiction where its judgments cannot be enforced, since such cases do not involve exercise of the judicial power granted by Const. art. 3, § 1, that restriction does not apply to the other federal courts, whose jurisdiction is defined by acts of Congress, and such courts can entertain a suit for the partition of Indian lands, though decree for partition is subject to the approval of the Secretary of the Interior.

**5. Descent and distribution ⊗═3—Kansas statute disinheriting one convicted of killing ancestor does not govern inheritance in Oklahoma.**

Gen. St. Kan. 1915, § 3856, providing that no person convicted of killing another shall inherit from the person killed, is a law of inheritance, not a law fixing the status of persons domiciled within the state, and therefore cannot control inheritance as to lands located in Oklahoma.

**6. Descent and distribution ⊗═63—Oklahoma statute does not disinherit on conviction of killing ancestor in another state.**

Laws Okl. 1915, c. 136, § 1, providing that no person convicted of killing another shall inherit from such person, disqualifies a person from inheriting only on conviction in the courts of the state; so that a wife, convicted in Kansas for killing her husband in that state, can inherit an interest in his lands located in Oklahoma.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by Luella Moncravie against Henri Eunice Moncravie Van Tine, now Harrison, and others. Decree for complainant, and defendants appeal. Affirmed.

C. S. Macdonald, of Pawhuska, Okl. (C. S. Beekman, of Tulsa, Okl., and T. J. Leahy, Swan C. Burnette, and F. W. Files, all of Pawhuska, Okl., on the brief), for appellants.

A. M. Jackson, of Winfield, Kan. (A. L. Noble, of Winfield, Kan., and Dale & Bierer, of Guthrie, Okl., on the brief), for appellee.

Before SANBORN, Circuit Judge, and LEWIS and MUNGER, District Judges.

SANBORN, Circuit Judge. On June 1, 1917, Henry E. Moncravie, an incompetent member of the Osage Tribe of Indians, died intestate, seized of about 650 acres of land in the state of Oklahoma, which had been duly allotted to him, and which he held under restrictions on its alienation in accordance with the act of Congress (34 Stat. 539, c. 3572). He left surviving him his widow, Luella Moncravie, the complainant in the District Court, and Henri Eunice Moncravie his daughter, then a minor, whose name is now Henri Eunice Moncravie Harrison. This daughter and A. W. Comstock, as her guardian ad litem and as her general guardian, were the defendants below, and in this discussion the parties will be styled as in the District Court. The issue between them is whether the plaintiff is entitled as an heir of Henry Moncraivie, her former husband, to one-half of this land and of its rents, profits, and proceeds, or his daughter, as his sole heir,

is entitled to all of them. The answer to this question is conditioned by these conceded facts:

This land descended to the decedent's. heirs under the act of Congress in accordance with the laws of descent and distribution of the state of Oklahoma. Those laws provided that, in such a case as that under consideration, this land should descend in equal shares to the surviving wife of Henry Moncravie and to his child. Revised Laws of Oklahoma 1910, § 8418. But in the year 1915 the Legislature of that state also provided that—

"No person who is convicted of having taken, or causes or procures anotner to to take, the life of another, shall inherit from such person, or receive any interest in the estate of the decedent, or take by devise or legacy, or descent or distribution, from him, or her, any portion of his, or her, estate." Session Laws of Oklahoma 1915, p. 225, § 1; Bunn's Ann. Supp. to Revised Laws of Oklahoma 1915, § 8418.

At the time of the death of Moncravie, his wife was, and still is, a citizen of the state of Kansas, and he died in that state. There then was, and still is, a statute of that state similar in all material respects to that just quoted, to the effect that no person convicted of killing, conspiring to kill, or procuring the killing of another should inherit or receive property from the person so killed. General Stat. of Kansas 1915, § 3856. In the year 1918, in the district court of Cowey county, in the state of Kansas, the plaintiff was convicted "of manslaughter in the third degree in the unlawful killing of Henry Moncravie with a dangerous weapon, in the heat of passion, and without a design to effect death," and was sentenced to "the state industrial farm for women for a period not to exceed three years." The question in this case on the merits is whether or not the plaintiff inherits one-half of this real estate in Oklahoma, notwithstanding her conviction of manslaughter in the third degree in Kansas. The court below was of the opinion that she did, and rendered a decree in her favor, from which the defendants have appealed.

[1] At the threshold of the discussion the plaintiff is met by the assertion of counsel for the defendant that the decree should be reversed, because the court below had no jurisdiction of the subject-matter of this suit, for the reason that the county court of Osage county, Okl., upon the petition of the defendants, had, before this suit was commenced, appointed the defendant A. W. Comstock, first, as special, and, second, as general, administrator of the estate of Moncravie, Mr. Comstock had qualified as such, and has since been and still is administering that estate. As such administrator he took possession of the property before the suit in hand was initiated. They invoke the conceded rule that the court which first acquires jurisdiction of specific property by the seizure thereof, or by the due commencement of a suit from which it appears that it is or will become necessary to a determination of the controversy involved therein, or to the enforcement of the prospective judgment or decree for the court to seize, to charge with a lien, to sell, or to exercise like dominion over the property, thereby withdraws that property from the jurisdiction of every other court, so far as is necessary to accomplish the

purpose of the suit, and that court is entitled to retain such control as is requisite to effectuate its final judgment or decree therein free from the interference of every other tribunal. Sullivan v. Algrem, 160 Fed. 366, 369, 87 C. C. A. 318, 321.

[2] But this rule is inapplicable to the case in hand. This is a suit in equity by a citizezn and resident of the state of Kansas against residents and citizens of the state of Oklahoma, to obtain an adjudication between them of the complainant's right as an alleged heir of her deceased husband to receive one-half of his real estate in Oklahoma, to a partition thereof, and to an enforcement of that adjudication. Every estate of a decedent in the possession of an administrator, an executor, or other party constitutes a trust held for the benefit of those equitably entitled to receive it. The High Court of Chancery in England, at the time of the passage of the Judiciary Act of 1789 (1 Stat. 73, c. 20), had jurisdiction of the adjudication and enforcement of trusts. The jurisdiction in equity of the courts of the United States, derived from the federal Constitution and statutes, over controversies between citizens of different states which involve the requisite amounts, is like unto that of the High Court of Chancery of England in 1789, and it includes the adjudication and the enforcement of that adjudication of the claims of citizens of other states as heirs, legatees, and as creditors (where the proper diversity of citizenship exists and the requisite amounts are involved) to interests in estates of decedents in the possession of administrators, executors, or other parties engaged in the administration thereof under the legislation of the states establishing courts of probate and giving them jurisdiction of such administration.

This jurisdiction of the federal courts, it is true, does not include the power to draw to them administration of estates as such, or to take from the proper officials of the probate court, during their administration of the estates in due course, the possession of the property necessary for that administration. But it confers the power and imposes the duty upon the federal courts sitting in equity to hear, determine, adjudge, and to enforce their adjudications of the claims of the citizens of other states, who invoke their jurisdiction by proper suits to interests as heirs, legatees, distributees, or creditors in estates in possession of officers of probate courts of states other than those of the residence of the claimants engaged in the administration thereof, although such officers may have obtained their possession before such suits were commenced in the federal courts.

The affirmance and exercise of this jurisdiction has been frequent and constant in all the federal courts. Illustrations of its exercise may be found in adjudications of the rights of heirs in Byers v. McAuley, 149 U. S. 608, 610, 620, 621, 622, 13 Sup. Ct. 906, 37 L. Ed. 867; Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 41, 43, 45, 46, 30 Sup. Ct. 10, 54 L. Ed. 80, and in many other cases. Illustrations of its exercise in the adjudication of the rights of devisees and legatees may be found in Gaines v. Fuentes et al., 92 U. S. 19, 20, 23 L. Ed. 524; Richardson v. Green, 61 Fed. 423, 429, 435, 9 C. C. A. 565, 571, 578; Ellis v. Davis, 109 U. S. 485, 497, 3 Sup. Ct. 327, 27

L. Ed. 1006; and Sawyer v. White, 122 Fed. 223, 227, 58 C. C. A. 587, 581. Illustrations of its affirmance and exercise in the adjudication of the rights of creditors may be found in Brun et al. v. Mann, 151 Fed. 145, 150, 151, 80 C. C. A. 513, 518, 519, 12 L. R. A. (N. S.) 154, Union Bank of Tennessee v. Vaiden, 18 How. 503, 15 L. Ed. 472, Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130, Suydam v. Broadnax, 14 Pet. 67, 74, 10 L. Ed. 357, Borer v. Chapman, 119 U. S. 587, 588, 589, 7 Sup. Ct. 342, 30 L. Ed. 532, Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260, Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630, Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547, Hayes v. Pratt, 147 U. S. 557, 570, 13 Sup. Ct. 503, 37 L. Ed. 279, and Security Trust Co. v. Black River National Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 147.

The decree goes no further than to adjudge that the complainant is entitled to an undivided half interest in the property of the estate of her deceased husband situated in the state of Oklahoma, that the lands be partitioned between her and the daughter of the decedent, if partition can be justly made, and that the partition and sale of the property shall be subject to the approval of the Secretary of the, Interior, as provided by section 6 of the act of Congress of April 18, 1912, 37 Stat. 86. It does not deprive the administrator or the county court of the possession of the estate or disturb the orderly administration thereof. "It is to be presumed," however, as the Supreme Court said in the Waterman Case, 215 U. S. 46, 30 Sup. Ct. 10, 54 L. Ed. 80, "that the probate court will respect any adjudication which might be made in settling the rights of parties in this suit in the federal court. It has been frequently held in this court that a judgment of a federal court awarding property or rights, when set up in a state court, if its effect is denied, presents a claim of federal right which may be protected in this court." The plaintiff in this case is a white woman, a citizen of the United States, entitled to every right and privilege of such a citizen, there was the requisite amount in controversy and the requisite diversity of citizenship in this suit, and the court below had plenary jurisdiction of her claim under the Constitution and laws of the United States, unless it was deprived of that jurisdiction by some special act of Congress, which took from her some of the rights and privileges of citizens of the United States in general.

[3] It is contended that the court below was deprived of its general jurisdiction of this particular suit by sections 3 and 6 of the act of Congress of April 18, 1912 (37 Stat. 86), which provide (section 3) that the property of deceased incompetent allottees of the Osage Tribe "shall, in probate matters, be subject to the jurisdiction of the county courts of the state of Oklahoma," and (section 6) "that from and after the approval of this act the lands of deceased Osage allottees, unless the heirs agree to partition the same, may be partitioned or sold upon proper order of any court of competent jurisdiction in accordance with the laws of the state of Oklahoma: Provided, that no partition or sale of the restricted lands of a deceased Osage

allottee shall be valid until approved by the Secretary of the Interior." The general statutes of Oklahoma provide that upon the final settlement of the accounts of the administrator, upon the application of any person in interest, the county court shall proceed to distribute the residue of the estate to those by law entitled thereto (Revised Laws of Oklahoma 1910, § 6463), that in its decree the county court must name the persons and the proportions or parts to which each shall be entitled (section 6464), that when the estate, real or personal, assigned by the decree of distribution to two or more heirs, is in common or undivided, partition or distribution may be made by commissioners (section 6468), but that, before commissioners are appointed or such partition is ordered, a petition by some person in interest must be filed and notice must be given to all persons interested (section 6469).

Although no such proceedings in partition have been commenced in the county court of Oklahoma, counsel for the defendant insist that the provisions of the act of Congress which have been cited and of these statutes of Oklahoma vested in that court exclusive jurisdiction of the adjudication of the persons interested in the estates of deceased incompetent Osage Indians and of the adjudication of their interests, and deprived the federal courts of the jurisdiction to adjudicate the claims of citizens of other states against citizens of Oklahoma to interests as heirs, creditors, or legatees in the estates of incompetent Osage Indians in the state of Oklahoma. This position, however, is untenable, because the plaintiff is a white woman, a citizen and resident of the state of Kansas, the federal courts had original jurisdiction to determine such controversies as that here in issue between her and citizens of Oklahoma before the act of April 18, 1912, was passed, and because that act expressly provides that the lands of deceased Osage allottees may be partitioned and sold, not upon the proper order of the county court of Oklahoma alone, but on the proper order of any court of competent jurisdiction, and the court below was a court of competent jurisdiction to hear and determine the important issues of heirship and partition presented by this issue.

[4] The final objection to the jurisdiction of the court below is that its judgment or decree is not conclusive, and that the court below has no power to enforce it, unless the partition or sale it directs is approved by the Secretary of the Interior. Kenny v. Miles, 250 U. S. 58, 39 Sup. Ct. 417, 63 L. Ed. 841, filed May 19, 1919. In support of this contention they cite Hayburn's Case, 2 Dall. 408, 411, 412, 1 L. Ed. 436, United States v. Ferreira, 54 U. S. (13 How.) 39, 49, 50, 14 L. Ed. 42, In re Sanborn, 148 U. S. 222, 226, 13 Sup. Ct. 577, 37 L. Ed. 429, Gordon v. United States, 117 U. S. 699, La Abra Silver Mining Co. v. United States, 175 U. S. 423, 457, 20 Sup. Ct. 168, 44 L. Ed. 223. But the effect of the decisions in those cases is that the Supreme Court is without jurisdiction to review the judgments or findings of an inferior federal court in a case in which the Supreme Court would have no power to enforce its judgments, because the third article of the Constitution, section 1 provides that "the judicial power

of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish," and the review by the Supreme Court of findings or judgments in cases in which it could not enforce its judgments is not the exercise of this judicial power granted to it by the Constitution. The Supreme Court, however, is the only court whose jurisdiction is thus fixed, and limited by the Constitution. The other courts of the United States, including the court below and this court, are ordained and established and their jurisdiction is fixed by the acts of Congress, and, as was said in the leading case (117 U. S. 699) by Chief Justice Taney, Congress may undoubtedly establish tribunals with special powers subject to the supervision of the head of an executive department.

In the case in hand Congress has expressly granted the power to hear and adjudge the claims of heirs of deceased incompetent Osage Indians to any court of competent jurisdiction subject to the approval of the Secretary of the Interior. The court below is a court of competent jurisdiction. If it may not adjudge the claims of such alleged heirs, then no court of competent jurisdiction may, the county court may not, and the contestants are remediless. It may be and perhaps is true that the Supreme Court is without power to review the judgments or decrees of the tribunals upon which the Congress has conferred the power to adjudicate these claims, but that fact is not conclusive of the jurisdiction of the court below or of this court. They are legislative courts, while the Supreme Court is a constitutional court. Nor does the fact that the partitions and sales which the tribunals named in the act of April 18, 1912, adjudge may not be effected until the Secretary of the Interior approves them much disturb our minds. They rest in the abiding conviction that these decrees will commend themselves to his approbation, and the conclusion is that the court below had plenary jurisdiction to hear and adjudge the issues in this case. We come, then, to the merits of this litigation.

[5] If the plaintiff is not entitled as the surviving wife of her deceased husband, Henry Moncravie, to an equal share of the real estate in Oklahoma of which he died seized, it is because she was convicted of having taken his life within the true intent and meaning of the Oklahoma statute of 1915. In the consideration of this question the fact that it is not the taking of the life of her husband, but the conviction of the taking of that life, that under the statute of Oklahoma and the statute of Kansas disqualify one from inheriting or receiving a share in the estate of the deceased, must be borne in mind. The plaintiff was convicted by a court of the state of Kansas, but she was never convicted by any court of the state of Oklahoma, of killing her husband. Defendant's counsel argue that this conviction by the court of her own domicile fixed her status and disqualified her as an heir of the land of her former husband in the state of Oklahoma, where that land was situated.

In suppport of this proposition they cite Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321, and other cases of its class, to the effect that,

where the legal personal relations of claimants to a decedent, such as the relations of husband and wife, or father and son, or father and adopted son, have been adjudged or fixed before the death of the decedent, according to the laws of the state or country of their domicile at the time they were fixed, those relations determine the qualifications of the claimants to inherit real estate of decedents under the laws of states and countries other than that of the domicile. In the Ross Case, for example, the intestate in 1871, while he was residing in the state of Pennsylvania, adopted as his heir, by a decree of a competent court of that state, an infant son of one John Wesley Smith. Afterwards in that year he removed with his wife and this adopted son to Springfield, Mass., there established their residence and there continued to reside until he died intestate in 1873. The Supreme Judicial Court of Massachusetts held that the adopted son was, by virtue of the decree of adoption of the Pennsylvania court, a qualified heir of the real estate of the decedent situated in Massachusetts. But in that case and in the other cases of that class the personal relations which conditioned the qualifications of the claimants as heirs or as distributees were fixed by the laws of the domiciles before the deaths, and those laws were not laws of descent or distribution of the estates of the decedent.

In the case at bar the qualification of the plaintiff as an heir was not fixed by any law, decree, or fact before or at the time of the death. It was not even conditioned by the killing. It was dependent upon her subsequent conviction of the killing according to the true intent and meaning, not of the law of Kansas, but of the law of Oklahoma. These laws are laws of descent and distribution, not laws prescribing the personal relations of the parties before the decease. This conclusion is demonstrated by the fact that, if the law disqualifying a surviving wife who should subsequently be convicted of killing her husband from inheriting from him had been in force in Kansas, and had not been in force in Oklahoma, at the time of the death of her husband, there would have been no doubt that she was entitled to one-half of his real estate in the latter state; this because the laws of the state or country in which real estate is situated govern its inheritance, descent, alienation, and transfer. Upon these subjects the laws of other states have no effect in Oklahoma. Clarke v. Clarke, 178 U. S. 190, 195, 20 Sup. Ct. 873, 44 L. Ed. 1028. We turn, therefore, to the statute of that state.

[6] That statute declares that "no person who is convicted of having taken * * * the life of another shall inherit from such person, or receive any interest in the estate of the decedent." The plaintiff has never been convicted in the state of Oklahoma of taking the life of another, but she was convicted in Kansas of taking the life of her husband, in violation of the statute of the latter state. Counsel for the defendant earnestly insist that this conviction in a court of Kansas has disqualified her as an heir of her husband under the statute of Oklahoma; but there is no express declaration of any statute of Oklahoma that disqualifies a person who is convicted in any other state of having taken the life of one from whom she seeks to inherit. If the Kansas statute, instead of imposing the penalty of the loss of a

part of the estate of the person killed, had imposed a penalty of a smaller fine in money, there could be no doubt that such a penalty would be unenforceable in the state of Oklahoma.

"All legislation is prima facie territorial. Ex parte Blain, In re Sawers, 12 Ch. Div. 522, 528; State v. Carter, 27 N. J. (3 Dutcher) 499; People v. Merrill, 2 Parker, Crim. Rep. 590, 596. Words having universal scope, such as 'Every contract in restraint of trade,' 'Every person who shall monopolize,' etc., will be taken as a matter of course to mean only every one subject to such legislation, not all that the legislator subsequently may be able to catch." American Banana Co. v. United Fruit Co., 213 U. S. 347, 357, 29 Sup. Ct. 511, 515 (53 L. Ed. 826, 16 Ann. Cas. 1047).

This Oklahoma statute imposes a heavy penalty on one convicted of the killing it denounces. Penal statutes have no extraterritorial effect, and they must be strictly construed. It cannot have been the intention of the legislators of that state to impose this penalty on those convicted by the courts of other states or countries of like offenses under the statutes of foreign jurisdictions. It must have been their intention, and it must be the true construction of this statute, that its effect was to disqualify those only who are convicted of the offense it describes in the courts and under the laws of the state of Oklahoma, of the territory within which alone this penal statute may have effect.

The question has often arisen whether or not, under the laws of a state or country which disqualify a person who has been convicted of a felony, a conviction by a court of another state or country wrought disqualification, and the decision has been that it did not. Commonwealth v. Green, 17 Mass. 515; Sims v. Sims, 75 N. Y. 466, 468; Samuel v. Commonwealth, 110 Va. 901, 66 S. E. 222, 19 Ann. Cas. 380; Logan v. United States, 144 U. S. 263, 271, 303, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 233 Fed. 354, 358, 147 C. C. A. 289, 293, L. R. A. 1917A, 1133. In Queenan v. Territory of Oklahoma, 11 Okl. 261, 267, 277, 278, 71 Pac. 218, 61 L. R. A. 324, a statute of that state made one who had been convicted of a criminal offense punishable by imprisonment in the penitentiary incompetent to serve as a juror, one of the jurors in the trial of a murder case had been convicted of such an offense in the state of Nebraska, and the question arose whether or not that conviction disqualified him to act as a juror under the law of Oklahoma. The Supreme Court of that state answered:

"In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in the penitentiary in another state, such conviction and sentence can have no effect by way of penalty or personal disability or disqualification beyond the limits of the state in which the judgment was rendered."

And after a thoughtful reading and review of the authorities on this subject, our conclusion is that, where the statute of a state of the location of the real estate of the decedent by its terms disqualifies a person who is convicted of taking the life of another from inheriting or receiving any interest in the estate of such decedent, such conviction in another state or country has no effect to disqualify or disable the person so convicted from inheriting or receiving the interest in

the estate in the state of the location of the real estate, which he or she would have been entitled to receive, if such conviction had never been had.

The decree below was right, and it is affirmed.