SINGLETON H. BIRD v. JAMES G. PLUNKETT ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 84398

Memorandum filed December 31, 1951.

Goldstein & Peck, of Bridgeport, for the Plaintiff.

Budington & St. John, of Greenwich, Marsh, Day & Calhoun, of Bridgeport, and Curtis, Brinckerhoff & Barrett, of Stamford, for the Defendants.

BORDON, J.   The defendant, James Garrett Plunkett, shot and killed his wife on November 1, 1949.  He was charged with murder in the second degree and tried to a jury.  On March 15, 1950, the jury found him guilty of manslaughter and he was so adjudicated.  Under the will of the decedent, dated October 30, 1942, the defendant husband is named sole beneficiary. The will further provides that if the husband predeceases the decedent the estate is to pass to the plaintiff.  The plaintiff has brought this action praying for a declaratory judgment to determine whether the husband is barred from deriving any benefit from his deceased wife's will because of his wrongful act in causing her death.  The defendant husband demurred to the complaint as amended, on the ground that the adjudication of manslaughter does not bar him from taking under the will because General Statutes, § 7062, bars only one finally adjudged guilty of murder in the first or second degree.  The court is called upon to determine whether the plaintiff's complaint, as amended, sets up a cause of action.

Section 7062, which was adopted in 1947, provides as follows: "No person finally adjudged guilty, either as the principal or accessory, of murder in the first or second degree shall be

entitled to inherit or take any part of the real or personal estate of the person killed, whether under the provisions of any act relating to intestate succession, or as devisee or legatee, or otherwise under the will of such person; nor shall such person inherit or take any real or personal estate of any other person as to which such homicide terminated an intermediate estate, or hastened the time of enjoyment. With respect to inheritance from or participation under the will of the person killed, the person so finally adjudged guilty of murder in the first or second degree shall be considered to have predeceased the person killed."

This question is one of first impression in Connecticut. Many jurisdictions have passed upon it with varying results. Many of the decisions interpreted statutes similar to ours and others reached conclusions in the absence of such statutes. The court is, therefore, called upon to chart a course for this state which, when finally reviewed by our Supreme Court, will settle, for this state, the conflict in judicial pronouncements.

A minority of courts hold that notwithstanding there is no express statutory provision denying to one who killed his benefactor the right to inherit from him he is not entitled to so inherit. *Perry* v. *Strawbridge,* 209 Mo. 621, 16 L. R. A. (N. S.) 244; *In re Tyler's Estate,* 140 Wash. 679; *Wall* v. *Pfanschmidt,* 265 Ill. 180; Mackeldey, Roman Law, p. 530-550. These decisions have based such denial on a "reasonable interpretation" of the descent statutes, and read into such statutes the common-law maxim and civil-law rule that benefits of statutes in derogation of the common law will not be enforced where, to do so, would be against public policy. Notes, 51 A. L. R. 1098, 3 L. R. A. (N. S.) 729, 39 L. R. A. (N. S.) 1088.

Many of these decisions disregard legislative enactments by substituting reasoning calculated to superimpose on descent statutes unauthorized and unintended legislative declarations. They hold that no system of jurisprudence can with reason include amongst the rights which it enforces rights directly resulting to the person asserting them from the crime of that person. *Hall* v. *Knight,* [1914] P. 1; *Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591; note 98 A. L. R. 773; *Cleaver* v. *Mutual Reserve Fund Life Assn.,* [1892] 1 Q. B. 147.

Perhaps the leading case adhering to this view is *Riggs* v. Palmer, 115 N. Y. 506, in which the court said (p. 511): "What could be more unreasonable than to suppose that it was

the legislative intention in the general laws passed for the orderly, peaceable and just devolution of property, that they should have operation in favor of one who murdered his ancestor that he might speedily come into possession of his estate? . . . No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Ellerson* v. *Westcott*, 148 N. Y. 149; *Van Alstyne* v. *Tuffy*, 103 Misc. 455; *Matter of Sparks*, 172 Misc. 642.

As already indicated, this decision was arrived at in the absence of a statute such as we now have in Connecticut, and in disregard of the statutes of descent, which the majority opinion in the case subordinates to what it calls the common law. This view finds support in the opinions of law writers in law publications of high standing. 30 Am. L. Rev. 130; 4 Harv. L. Rev. 394; Wharton, Homicide (3d Ed.) § 665. *Box* v. *Lanier*, 112 Tenn. 393, 64 L. R. A. 458, holds that the common-law rule in force in Tennessee, whereby the surviving husband becomes the owner of his predeceased wife's choses in action, does not apply where he makes himself the survivor by murdering his wife. The case of *Riggs* v. *Palmer*, supra, was decided by a divided court, two of the seven judges dissenting on the ground that the statute prescribes the method by which, and by which only, a duly executed will can be revoked: that the provisions of the civil law are not applicable as against the positive enactments of the legislature, and that it is not the province of the courts to assume functions of the legislative department of the government. The majority view is followed in Missouri and was at first followed in Nebraska. *Perry* v. *Strawbridge*, 209 Mo. 621; *Shellenberger* v. *Ransom*, 31 Neb. 61, 74. However, the *Shellenberger* case was later reargued and when it was finally decided, the Supreme Court of Nebraska in a unanimous and emphatic opinion, reversed its former decision and sided with the dissenting judges in *Riggs* v. *Palmer*, holding that courts cannot annul the positive enactment of the legislature by reading into it the limitations of the civil law or the promptings of humanity. *Shellenberger* v. *Ransom*, 41 Neb. 631.

Many of the cases adhering to the minority view, some of which appear in plaintiff's brief, are based on wills and contracts and not on statutory rights, and when carefully analyzed may be harmonized with the majority view. *Hagan* v. *Cone*,

21 Ga. App. 416; *Wall* v. *Pfanschmidt,* 265 Ill. 180; *McAllister* v. *Fair,* 72 Kan. 533; *Holloway* v. *McCormick,* 41 Okla. 1; *Carpenter's Estate,* 170 Pa. 203. Many of the cases relied on in support of the minority view deal with insurance policies where the usual equitable principles and the law pertaining to fraud are applied to contractual rights.

In most jurisdictions where the question has arisen courts have uniformly held that judicial tribunals have no concern with the policy of legislation. It is repeatedly suggested in such opinions that even legislatures should respect both the letter and spirit of the constitution and hesitate to attach to felonies any consequences which would override the law of descent. *Shellenberger* v. *Ransom,* 41 Neb. 631; *Deem* v. *Milliken,* 6 Ohio C. C. 357, aff'd, 53 Ohio St. 668; *In re Powers,* 25 Vt. 261, 265.

The Supreme Court of Pennsylvania, after a careful and exhaustive review of the authorities, refused to make any innovation on the law of descents by decreeing a forfeiture of the inheritance of one causing the death of his benefactor. *Carpenter's Estate,* 170 Pa. 203. The same conclusion was reached in North Carolina, where it was decided that a widow, guilty of murder of her husband, was not for that reason debarred of her dower in his estate, because this would be a forfeiture of property for crime, and forfeitures of property are unknown to our law. *Owens* v. *Owens,* 100 N. C. 240.

Similar rulings were thereafter made in a number of other states, all holding that no exception can be engrafted by the courts upon the provisions of the statutes of descent and distribution because of the crime of the beneficiary in causing the death of his benefactor. *Gollnik* v. *Mengel,* 112 Minn. 349; *Wellner* v. *Eckstein,* 105 Minn. 444; *Bruns* v. *Cope,* 182 Ind. 289; *Kuhn* v. *Kuhn,* 125 Iowa 449; *In re Estate of Emerson,* 191 Iowa 900; *Holloway* v. *McCormick,* 41 Okla. 1; *Harrison* v. *Moncravie,* 264 F. 776; *Wall* v. *Pfanschmidt,* 265 Ill. 180, *McAllister* v. *Fair,* 72 Kan. 533; *Eversole* v. *Eversole,* 169 Ky., 793; *Hagan* v. *Cone,* 21 Ga. App. 416; *Johnston* v. *Metropolitan Life Ins. Co.,* 85 W. Va. 70.                             .

There appears to be no escape from the conclusion that courts are not warranted in disregarding the compelling effect of statutes of descent and distribution, or the conclusiveness of duly executed wills, by attempting to divert the succession from the murderers of ancestors or testators. It would appear that authorities now strongly preponderate in this direction.

Many states have enacted legislation similar to our § 7062 in an effort to observe the integrity of statutes of descent, and at the same time disqualify murderers from inheriting property of their victims. Where such statute has been enacted legislative bodies took cognizance of the existence of laws of descent by providing that the person guilty of murder shall be considered to have predeceased the person killed. In no other way could the murderer be barred from participating in an estate where his rights are created by the laws of descent. Thus the states of Mississippi, Iowa and Tennessee have enacted legislation depriving a person wilfully causing the death of another of the right to inherit from such other as if the person causing the death had never been in existence. Miss. Code Ann. § 479 (1942); Iowa Code § 636.47 (1950); *Kuhn* v. *Kuhn*, 125 Iowa 449; Tenn. Code Ann. § 8388 (Williams 1934); *Beadingfield* v. *Estill*, 118 Tenn. 39.

The statutes of Kansas and Oklahoma were involved in *Harrison* v. *Moncravie*, 264 F. 776, where it was held that the statute only applies in case of conviction within the state, even though statutes in both states are similar. In this case a widow was convicted in Kansas of killing her husband, but was allowed to inherit real estate in Oklahoma because the conviction was not in the state where the property was located. In Indiana the statute has been interpreted as not applying to a widow's statutory award because she takes the same absolutely. *In re Mertes Estate*, 181 Ind. 478. In the case of *Bruns* v. *Cope*, 182 Ind. 289, it was held that a mere allegation that the beneficiary aided and abetted the death, without alleging a conviction, is demurrable.

In California a statute bars a person convicted of murder of the decedent from participating in the victim's estate. It was held in *Estate of Kirby*, 162 Cal. 91, that a manslaughter conviction did not bar the person so convicted from sharing in the decedent's estate, and that a conviction of manslaughter is not a conviction of murder.

A similar result was had in Pennsylvania where the statute bars inheritance to a person "finally adjudged guilty . . . of murder of the first or second degree." *Tarlo's Estate*, 315 Pa. 321. And in Ohio a statute similar to our § 7062 has been strictly construed by the court. *Oleff* v. *Hodapp*, 129 Ohio St. 432.

Some cases have involved statutes expressly denying the right of a felonious slayer to inherit from his victim (Notes, 6 A. L. R. 1409, 51 A. L. R. 1098, 5 L. R. A. 345), but in such cases the terms of the statutes created no exceptions. Where statutes prevent inheritance by one "convicted of killing," courts have held that manslaughter was not excepted. *Hamblin* v. *Marchant,* 103 Kan. 508, 104 Kan. 689. The Kansas statute bars from inheritance one convicted of manslaughter in the third degree and in construing this statute the court felt itself bound by the provisions thereof.

The court has given careful study to the able briefs filed by both parties and has read many cases on the subject. The preponderance of legal opinion favors a strict construction of statutes such as our § 7062, and zealously repels invasions on statutes of descent. The plaintiff is here asking the court not only to disregard our own descent statutes but to read into § 7062 something that does not appear therein nor could have been intended by the legislature. The sociological and public policy considerations which have been stressed by the plaintiff cannot overcome the plain duty of the court to determine this controversy on the basis of existing statutes. The right of inheritance cannot depend on ideas of court or counsel not sanctioned by statute. It is not for the court to substitute its own idea of public policy for that declared by the legislature. In this state public policy on the subject has been declared by the legislature in our laws of descent and in declaring that only persons "finally adjudged guilty of murder in the first or second degree" shall be barred from inheriting from the victims. As has already been said, murder does not include manslaughter.

The plaintiff also contends that he should not be bound by the conviction in a criminal court but should be permitted to retry the case to a civil court or jury, which may by a verdict determine that the defendant was guilty of a decree of homicide which would bar him even under the statute. Under our practice in this state one accused of crime is tried in a criminal court, and a final adjudication in such court is conclusive. There is nothing in the laws of this state that gives one the right to bypass a final adjudication in a criminal court in an effort to prove one guilty of some other crime in a civil proceeding. In the opinion of the court the adjudication of manslaughter is conclusive on the plaintiff.

The demurrer is sustained on the grounds therein stated.