*W. B. Stubbs, G. N. Alford,* for plaintiff.

*Anderson, Cann, Cann & Walsh,* for defendant.

---

8649. HAGAN, administrator, *et al. v.* CONE, ordinary, for use.

Under the laws of Georgia, the fact that an heir kills the person from whom he expects to inherit will not change the application of the statutes of descent.

> DECIDED DECEMBER 13, 1917.

Action upon bond; from Bulloch superior court—Judge Hardeman. October 25, 1916.

*Anderson & Jones, Strange & Metts,* for plaintiffs in error.

*Brannen & Booth, J. D. Sparks,* contra.

BLOODWORTH, J. 1. The question in this case is whether or not a husband who kills his wife can inherit her property. It appears that this question has never been answered by a court of last resort of this State. Section 3930 of the Civil Code of 1910 is as follows: "Upon the death of the wife the husband is her sole heir, and upon payment of her individual debts, if any, may take possession thereof without administration, unless she dies intestate leaving a separate estate without remainder or limitation over which can and does take effect, and leaves, with the husband,

a surviving child or children  .  .  ; then such separate estate shall be equally divided, share and share alike, between said husband and said offspring per capita, but the descendants of children shall take per stirpes." We know of no law in Georgia changing this rule in case the husband should kill his wife. Indeed the constitution of our State provides, in article 1, sec. 2, par. 3 (Civil Code of 1910, § 6384) : "No conviction shall work corruption of blood or forfeiture of estate." As showing the policy of our law along this line, § 4161 of the Civil Code of 1910 is as follows: "Forfeiture to the State for crime is abolished in this State, except so far as the lien which the State holds upon all the property of an offender for the costs of the prosecution against him." While in some of the States it has been held that one who kills another can not inherit from the deceased, yet the strong current of authority is against this opinion; and where there is a statute which fixes the rule of descent, as in our State, the authorities are practically united in holding that the fact that the heir killed the person from whom he is to inherit will not bar the operation of the statute. In the case of McAllister v. Fair, 72 Kan. 533 (84 Pac. 112, 3 L. R. A. (N. S.) 726, 115 Am. St. R. 233, 7 Ann. Cas. 793), the headnote is as follows: "The power to declare the rule for the descent of property is vested in the legislature; and where it has provided in plain and peremptory language that a husband shall inherit from his deceased wife, and no exception is made on account of criminal conduct, the court is not justified in reading into the statute a clause disinheriting the husband because he feloniously killed his intestate wife for the purpose of acquiring her property." And in the opinion of the court Johnston, C. J., says: "Although a theory cutting a murderer out of any benefits resulting from his crime appeals to the court's sense of justice, it can not be overlooked that the legislature has the power to declare a rule of descents; it has done so in language that is plain and peremptory, and no rule of interpretation would justify the court in reading into the statute an exception or clause disinheriting those guilty of crime." In the case of Bosley v. Mattingly, 53 Ky. 89, the, principle is thus announced: "When the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by the change of the law itself, to be effected by legislative and not judicial action." See

27

also Shellenberger *v.* Ransom, 41 Neb. 631 (59 N. W. 935, 25 L. R. A. 564). In the case of Owens *v.* Owens, 100 N. C. 240 (6 S. E. 794), the 2d headnote is as follows: "Forfeiture of property for crime is unknown to our law, nor does crime intercept the transmission of an intestate's property to his heirs and distributees." In the opinion Smith C. J. says: "Does the husband who kills his wife impair his right, under the statute of distributions, to succeed to the ownership of her personal property left after payment of debts? Or, in general terms, does any one, as a consequence of an unlawful taking of a human life, become thereby disabled to take a part of the estate left by the deceased, which the law gives him, and gives him subject to no such condition? We are unable to find any sufficient legal ground for denying to the petitioner the relief which she demands; and it belongs to the lawmaking power alone to prescribe additional grounds of forfeiture of the right, which the law itself gives, to a surviving wife. Forfeitures of property for crime are unknown to our law, nor does it intercept for such cause the transmission of an intestate's property to heirs and distributees, nor can we recognize any such operating principle. We have searched in vain for any authority or ruling on the question, and find no adjudged case; the fact that none such is met with affords a strong presumption against the proposition." A headnote in the case of James Carpenter's estate, 170 Pa. 203 (32 Atl. 637, 29 L. R. A. 145, 50 Am. St. R. 765), has the following: "A son who has murdered his father for the purpose of securing his father's estate is entitled to take the estate under the intestate laws. His crime does not destroy his right of inheritance." In discussing this case Mr. Justice Green (pp. 207-209) says: "The penalty for murder in the first degree in Pennsylvania is death by hanging. No confiscation of lands or goods, and no deprivation of the inheritable quality of blood, constitutes any part of the penalty of this offense. The declaration of rights, article 1, section 18, of the constitution of the State declares that 'no person shall be attainted of treason or felony by the legislature,' and by section 19 it is provided that 'no attainder shall work corruption of blood nor, except during the life of the offender, forfeiture of estate to the commonwealth. The estate of such persons as shall destroy their own lives shall descend or vest as in cases of natural death; and if any person shall be killed by casualty, there

shall be no forfeiture by reason thereof.' These are provisions of the organic law which may not be transcended by any legislation. . . The legislature has never imposed any penalty of corruption of blood or forfeiture of estate for the crime of murder, and therefore no such penalty has any legal existence. . . It is argued that the son who murders his own father has forfeited all right to his father's estate, because it is his own wrongful act that has terminated his father's life. The logical foundation of this argument is and must be that it is a punishment for the son's wrongful act. But the law must fix punishment; the courts can only enforce them. In this State no such punishment as this is fixed by any law, and therefore the courts can not impose it. . . It is argued however, that it would be contrary to public policy to allow a parricide to inherit his father's estate. Where is the authority for such a contention? How can such a proposition be maintained, when there is a positive statute which disposes of the whole subject? How can there be a public policy leading to one conclusion, when there is a positive statute directing a precisely opposite conclusion? In other words, when the imperative language of a statute prescribed that, upon the death of a person, his estate shall vest in his children in the absence of a will, how can any doctrine or principle, or other thing called public policy, take away the estate of a child and give it to some other person? The intestate law casts the estate upon certain designated persons, and this is absolute and peremptory, and the estate can not be diverted from these persons and given to other persons without violating the statute. There can be no public policy which contravenes the positive language of a statute." It is argued by counsel for the plaintiffs in error that it is against public policy to allow one to reap any benefit from his own criminal act; to allow the murderer to inherit from his victim. The quotation from the Carpenter case, just cited, answers this argument. "The public policy of a State is the law of that State as found in its constitution, its statutory enactments, and its judicial records." People v. Hawkins, 157 N. Y. 12 (51 N. E. 257, 42 L. R. A. 490, 6 Am. St. R. 736); Kuhn v. Kuhn, 125 Iowa, 449, 453 (101 N. W. 151). The statute of our State, quoted above, provides that the husband shall inherit from the wife. This is an absolute provision of the law; and where there is no will made by the wife, and she leaves no

children, her entire estate goes to the husband, and can not be diverted and given to others without a violation of the statute. "There can be no public policy which contravenes the positive language of the statute." This question is discussed as follows in 9 Ruling Case Law, 47, 48: "The weight of authority is to the effect that in the absence of a statute providing that murderers shall not inherit the property of their victims, the courts can not except murderers from the operation of the statutes of descent. The theory of these cases is that the horror and repulsion caused by such an atrocity does not warrant the court in reading into a plain statutory provision an exception which the statute itself in no way suggests. It is declared that the logical foundation of the argument that the wrongdoer can not take is that it is a punishment for the wrongful act, but that as the law must fix punishments and the courts can only enforce them, therefore, if no such punishment as this is fixed by any law the courts can not impose it; and further, that since the constitution positively prohibits any attaint of treason or felony by the legislature, and any corruption of blood by reason of attainder or any forfeiture of estate, except during the life of the offender, no such consequence can be visited on the offender. To the proposition that to permit the murderer to inherit is contrary to public policy, the reply in effect is that there can be no public policy which contravenes the positive language of a statute. With much force it has been pointed out that some leading cases which take a contrary view are based on wills and contracts, and not on mere statutory rights, and may be harmonized or their language disregarded as being dictum."

The court did not err in sustaining the demurrer to the plea, and properly directed a verdict for the plaintiff, under the agreement between the parties that this result should follow if the ruling on the demurrer was correct.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*