GENERAL HOSPITAL SOCIETY OF CONNECTICUT ET ALS. *v.* COUNTY OF NEW HAVEN ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 7—decided July 16, 1940.

*Frederick H. Wiggin,* with whom, on the brief, were *Arnon D. Thomas* and *John Q. Tilson, Jr.,* for the named plaintiff, and also *Philip Pond* for the plaintiff Grace Hospital Society and *Matthew A. Reynolds* for the plaintiff The Hospital of St. Raphael.

*John Clark FitzGerald,* with whom, on the brief, was *David E. FitzGerald,* for the defendants county of New Haven et als.

*Harry L. Brooks,* assistant attorney general, for the defendants Francis A. Pallotti, attorney general, et al.

BROWN, J. The plaintiffs are public hospitals located in the town of New Haven, and pursuant to their respective charters are charitable corporations which maintain and conduct hospitals for the sick and indigent by means of voluntary and private contributions and by appropriations from the state. They also receive some income from payments by patients able to pay for the cost of facilities and services furnished, but each cares for many indigent persons free of charge. All of the property of each is exempt from taxation and is held and used solely for public and charitable uses. The General Assembly has regularly

made appropriations toward the expenses of each. The plaintiffs comprise the principal public hospitals in the county of New Haven to which the agents of the county send patients. The agents of the county have from time to time in their official capacities and in discharge of their duty been sending to the plaintiffs certain children, inmates of the county temporary home at New Haven and certain prisoners in the New Haven County jail, who were in need of treatment and hospital care. For some time before July 1, 1937, each of the plaintiffs was charging the defendant county for this care and treatment at the customary hospital rate for like services, or at that fixed by contract for services, including board, lodging, professional treatment and care, and supplies incidental to hospitalization. The defendants are the county commissioners, the members of the board of management of the New Haven County Temporary Home for Children, hereinafter referred to as the County Home, the superintendent of the County Home, the attorney general of the state, the sheriff of the county and the jailer of the New Haven County jail. It is their claim that in view of the provisions of what is now § 90e, 1939 Sup., it is unlawful for the plaintiffs to charge or receive more than eight dollars per week for the care of any such children or prisoners. The plaintiffs contend that these are patients whose expense is to be paid by the county and that the statute is inapplicable. The question for determination is whether the amount which the plaintiffs may lawfully charge the defendant county for inmates sent from the County Home and the county jail for medical and hospital care in their hospitals, is limited to eight dollars per week by the provisions of § 189 of the General Statutes, Revision of 1930, as amended by §90e of the 1939 Supplement,

pertinent provisions of which appear in the footnote.[1] The answer depends upon the interpretation of this statute.

By the express wording of the statute the eight dollars per week restriction is applicable to those patients only whose expense is to be paid by the state, either (1) "directly," or (2) "through the agency of any town therein." Had it been the legislature's intent to include within the restriction all public cases, it very easily could and undoubtedly would have worded the statute accordingly. Instead, its terms specifically limit the cases within its purview to those falling under one or other of these two classifications defined. Accordingly, even though payments made by the county could be said to constitute indirect payments by the state, not being within either of the classifications stated, they would be excluded from the operation of the restriction. The question is, therefore, resolved to whether the payments in question by the county fall within the classification of direct payments by the state.

The defendants' chief contention is that since the creation as well as the continued existence of the county as a subdivision of the state is, as the plaintiffs concede, a matter of legislative will purely, it stands

---

[1] APPROPRIATIONS TO HOSPITALS. All appropriations to hospitals by the general assembly shall be expended under the direction of the governor and of the managers of such institutions, respectively, for the support of charity patients, and so used as to benefit the state as application may be made from time to time, a report of which expenditures shall be made biennially to the general assembly; . . . No such hospital shall charge or receive more than eight dollars per week for the care of any patient when such expense is to be paid by the state, either directly or through the agency of any town therein, except in the case of a patient suffering from a contagious disease, or when, because of greater care required, a greater weekly compensation shall be agreed upon by the comptroller in behalf of the state.

in the place of the state, and so its acts are the state's acts. It is true that counties have been characterized as being but "quasi corporations invested with some of the functions characteristic of corporate existence, but with much more limited powers and privileges than belong to true corporations," 14 Am. Jur. 187. It is also true that in the early history of this state the powers of the county were exceedingly limited, not even including capacity to be party to an action at law. *Ward* v. *County of Hartford,* 12 Conn. 404, 406. Since that time, however, they have been greatly extended by statute, until today the county has many powers, including a number of the more vital ones accorded to the town as a municipal corporation. Among its present powers and duties under the General Statutes are: to be sued (§ 5469); to settle actions in favor of and against the county, and to acquire, manage and dispose of property (§ 201); to condemn land for county buildings (§ 5065); to borrow money (§ 202); to build and repair jails and courthouses (§ 214), maintain the former (§ 2005), and provide facilities (§§ 2011, 2012) and employment (§ 2017) for the inmates, and for the latter to employ janitors (§ 203); to build and manage county homes (§§ 1873-1894) and maintain schools therein (1935 Cum. Sup., § 332c); to appoint a sealer of weights and measures (§ 2333); to compel the repair of highways by towns (§ 1421); to give aid to public hospitals within the county (§ 213); to reimburse the state for certain fire-fighting work done by it (§ 2182); to support bar libraries (§ 1069); to pay probation officers (§ 2266); and to pay for the promotion of agricultural interests (§ 2059, 1935 Cum. Sup. § 790c). To meet the expense necessitated by these statutory provisions the county is empowered to levy a county tax (§ 1890). Under the existing statutes the county is a legal en-

tity, distinct from that of the state. *City of Hartford* v. *County of Hartford,* 49 Conn. 554, 561; *New Milford* v. *Litchfield County,* 70 Conn. 435, 439, 39 Atl. 796.

While it is true that under the statutes the county is entitled to be reimbursed by the state in part at least for the support of inmates of the county jail and of the county home, this fact is by no means determinative that money expended by the county for the hospitalization of these persons is paid by it as agent of the state. Section 2007 of the General Statutes provides that the county commissioners may fix the amount to be paid for the board of prisoners at a sum not to exceed three dollars per week, and § 6527 places the obligation to pay for this board primarily upon the prisoners themselves, but provides that if they fail to do so the state shall pay it, and further that if "costs," which include board, are eventually recovered from the prisoner they shall be paid into the treasury of the state. General Statutes, 1939 Sup., § 591e, provides that in the case of a commitment to the county home the comptroller shall pay the board of management, upon certification of the commissioner of welfare the sum of three dollars and fifty cents per week. By § 1889, parents if of sufficient pecuniary ability are required to contribute to the support of their child. Section 1747 provides that when any sum shall have been paid by the state for the support of any person in an humane institution, he or his estate shall be liable to reimburse the state for the amount expended for his support or benefit, which amount may be recovered in a civil action in the name of the state, and the obligation is further broadened to include various other persons aside from parents. It thus appears that the state does, indirectly, to the amounts fixed in the statutes, pay for the board of the prisoners

and of inmates of the county temporary homes. Those payments do not, however, constitute a sum held by the county officials as a special fund to be used wholly for the board of the inmates, but just as payments made by the inmate himself or those liable for his support, they go into the general treasury of the county from which payments made for support are drawn. That this has been the uniform practice for a great many years appears from the returns of the county commissioners as printed by the comptroller, of which we take judicial notice. The money so paid by the state is not held and disbursed by the county merely as agent of the state, but becomes a part of its funds as a public corporation. Under these circumstances the payments in question by the county for hospital care certainly cannot be said to fall within the statutory provision of being "paid by the state . . . directly."

An analysis of the classes of persons who might require hospitalization and who must be supported by the state and the towns respectively, makes clear what the words "through the agency of any town therein" mean. The state must support (§ 1710) all persons without settlement, persons discharged from prison or jail who are not inhabitants of any town at the time of commitment and are without relatives able to support them, children born while such parents are in custody, and also (§ 1711) persons who had settlement but have been absent from the state for over four years and have become public charges within four years of their return to the state. The towns on the other hand, must support (§ 1693) all paupers having settlement in the town. In addition, each town must support (§ 1713) all "state" paupers therein and shall be reimbursed by the state for such support. It is this situation which the legislature had in mind when

it provided that the eight dollar rate should apply to all "state" cases where paid "through the agency of any town." In other words, it is in this case only, namely, a "state" case for which the town will receive reimbursement, that the provisions of the statute in regard to indirect payment are applicable.

Our conclusion is that the amount which the plaintiff hospitals may lawfully charge the defendant county for the treatment of patients brought or sent to one of them by the defendants or some of them in the discharge of their duty, and who receive such treatment and care therein, is not limited to eight dollars per week.

To question (a), asking whether or not the amount the hospitals may charge for the treatment and care of patients sent them by the defendants from county temporary homes or the jails is limited to eight dollars a week, we answer "No." To question (b), asking whether the hospitals may lawfully charge the defendants at the rate customary in like cases or fixed by contract for the usual services rendered in the hospitals, we answer "Yes." As to question (c), asking which of the defendants is liable for the payment of the hospital charges, the parties do not seem to be in dispute that the county is primarily liable, and we answer the question accordingly.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.