SINGLETON H. BIRD *v.* JAMES G. PLUNKETT ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 12, 1952—decided February 17, 1953

*David S. Day* and *Arthur C. Williams,* for the appellant (plaintiff), with whom was *Orson L. St. John,* for the appellant (defendant Curtis).

*David Goldstein,* with whom was *Bernard Glazer,* for the appellee (named defendant).

BROWN, C. J. The plaintiff brought this action for a declaratory judgment to determine whether the defendant Plunkett, who had been convicted of manslaughter in causing the death of his wife, is entitled to take title and the full beneficial interest in her entire estate pursuant to the provisions of her will or whether the full title or, if not, the beneficial interest under a constructive trust passes to the plaintiff and the defendant Curtis as the heirs at law and next of kin of the testatrix. The material facts alleged in the complaint as amended may be thus summarized: On November 1, 1949, in Stamford, the defendant Plunkett shot and killed his wife, Esther Bird Plunkett. Upon an indictment charging him with murder in the second degree of his wife, Plunkett was convicted of manslaughter on March 15,

1950. Article second of her will, executed October 30, 1942, provided: "I give, devise and bequeath to my beloved husband, James Garrett Plunkett, if he be living at the time of my death, my entire estate, both real and personal ... for his own use and benefit forever." The will was duly admitted to probate on November 21, 1949. The plaintiff Bird and the defendant Curtis, hereinafter referred to as the plaintiffs, are the next of kin and heirs at law of the testatrix. The executor threatens to distribute the entire estate to Plunkett.

The defendant Plunkett demurred to the amended complaint on the ground that it alleged that he "was charged with the crime of murder in the second degree in the killing of his late wife and that he was convicted of the crime of manslaughter and under Section 7062 of the General Statutes, Revision of 1949, it appears that only a person finally adjudged guilty of murder in the first or second degree is barred to inheritance from or participation under the will of the person killed." Section 7062 is entitled "Person guilty of murder not to inherit from victim." Its pertinent provisions are: "No person finally adjudged guilty, either as the principal or accessory, of murder in the first or second degree shall be entitled to inherit or take any part of the real or personal estate of the person killed, whether under the provisions of any act relating to intestate succession, or as devisee or legatee, or otherwise under the will of such person . . . . With respect to inheritance from or participation under the will of the person killed, the person so finally adjudged guilty of murder in the first or second degree shall be considered to have predeceased the person killed." The question for decision is whether the demurrer was properly sustained on the ground that convic-

tion of manslaughter did not bar the defendant Plunkett from taking under his late wife's will, because § 7062 bars only those finally adjudged guilty of murder in the first or second degree. This is a question of first impression in Connecticut. While there is a conflict of authority in the decisions of other jurisdictions, there is an unusual abundance of cases in which the issue has been ruled upon.

In determining the proper interpretation of § 7062, we must keep the provisions of three other statutes clearly in mind. Section 7309 relates to succession by a surviving spouse to property of the other who dies intestate. Section 6951, entitled "Wills, how made and executed," prescribes what is essential to the making of a valid will in Connecticut. Section 6956 provides: "If, after the making of a will, the testator shall marry or a child shall be born to [him] or a minor child shall be legally adopted by him, and no provision [was made in his] will for such contingency, [it] shall operate as a revocation of such will. No will or codicil shall be revoked in any other manner except by burning, cancelling, tearing or obliterating it by the testator or by some person in his presence by his direction, or by a later will or codicil." The express terms of the first statute leave no room for doubt that under it, if it controlled and if Plunkett's wife when killed by him had left no will, he would inherit her entire estate as intestate, since the complaint shows that there was neither a parent nor a child surviving. From the express terms of the statute as to the making of wills and the statute concerning their revocation, with the explicit and positive provisions in the latter as to what alone can accomplish revocation, it is equally clear that, if these statutes controlled, Plunkett under his wife's will would derive title to her entire

estate. Section 7062 by its express terms applies as to both testate and intestate property and so clearly provides that one finally convicted of first or second degree murder of his victim, from whom he claims to take, is barred, whether or not there is a will. In this case, the question is reduced to whether § 7062 can be construed to preclude Plunkett, as a killer, from taking, notwithstanding he has not been convicted of murder as expressly required by the statute.

The gist of the plaintiffs' argument, as we understand it, involves these propositions: The decisions of the courts do not create the common law but, when rendered, are only declaratory of the law that already exists. In the absence of a statute excluding the common-law authority of the courts, no person can take a devise or a legacy under the will of a testator whom he has feloniously killed, or, if he takes the legal title, he is subject to a constructive trust in favor of the heirs at law or next of kin. Section 7062 does not affect the common-law authority of the court to declare invalid or void a devise or a legacy in the will of a testator feloniously killed by the devisee or the legatee or to impose a constructive trust upon the devisee or the legatee. The statute has only the specific and limited application of permitting, in cases to which it applies, the introduction of the judgment of guilty of murder in the first or second degree to prove, in a civil action, the commission of the act charged—evidence which otherwise would be inadmissible. *Page* v. *Phelps,* 108 Conn. 572, 588, 143 A. 890.

Proceeding upon this thesis and, so, assuming that § 7062, instead of constituting an effective declaration as to the only killer who is precluded from receiving property by the death of his victim, the plain-

tiffs treat the statute as procedural merely, leaving unaffected an undeclared common-law power, which it is claimed exists in the court, to apply the ancient maxim that no one shall be allowed to profit by his own wrong and so to rule that no felonious killer can succeed to the property of his victim. It is upon the claimed power of the court to give effect to this maxim in the instant case, regardless of the positive provisions of the three statutes recited above, that the plaintiffs rely to preclude the right of the defendant Plunkett to take. As authority for this contention they rely upon principles enunciated in *Riggs* v. *Palmer,* 115 N.Y. 506, 22 N.E. 188, and subsequent decisions which have adopted a similar view.

In that case there was no statute similar to § 7062. The sole question was whether the testator's grandson, who had murdered the testator, could take as a beneficiary under his will. The majority opinion stated (p. 509) that, while the purpose of the statutes concerning wills was "to enable testators to dispose of their estates to the objects of their bounty at death, and to carry into effect their final wishes legally expressed," and it "was the intention of the law-makers that the donees in a will should have the property given to them," it "never could have been their intention that a donee who murdered the testator to make the will operative should have any benefit under it." The court then stated (p. 511) this as the ground of accomplishing the result: "Such an intention is inconceivable. We need not, therefore, be much troubled by the general language contained in the laws. Besides, all laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found

any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." The majority concluded that the crime of the grandson deprived him of any interest in his grandfather's estate.

In accord with the holding in the *Riggs* case, a minority of courts have held that one who has feloniously killed his benefactor cannot inherit from him notwithstanding there is no express statute similar to § 7062. *Estate of Wilkins,* 192 Wis. 111, 119, 211 N.W. 652, 51 A.L.R. 1106, and note, 1113; *Price* v. *Hitaffer,* 164 Md. 505, 514, 165 A. 470; *De Zotell* v. *Mutual Life Ins. Co.,* 60 S.D. 532, 538, 547, 245 N.W. 58; *Slocum* v. *Metropolitan Life Ins. Co.,* 245 Mass. 565, 570, 139 N.E. 816; *Perry* v. *Strawbridge,* 209 Mo. 621, 632, 108 S.W. 641; *In the Estate of Hall,* [1914] P. 1. In these decisions, as in the *Riggs* case, the courts have based their denial of the killer's right to take on a "reasonable interpretation" of the descent statutes and have read into them the common-law maxim and the civil-law rule that benefits of statutes in derogation of the common law will not be enforced where to do so would be against public policy.

Two of the judges in the *Riggs* case filed a strong dissenting opinion. In it they pointed out (p. 515 et seq.) that the question could not "be affected by considerations of an equitable nature," that the court was "bound by the rigid rules of law, which have been established by the legislature, and within the limits of which the determination of this question is confined," and that a will could not be altered or revoked after the testator's death "through an ap-

peal to the courts, when the legislature has, by its enactments, prescribed exactly when and how wills may be made, altered and revoked, and, . . . when they have been fully complied with, has left no room for the exercise of an equitable jurisdiction by courts over such matters. . . . [A] valid will must continue as a will always, unless revoked in the manner provided by the statutes. Mere intention to revoke a will does not have the effect of revocation." The dissent further points out (p. 519) that intention, " 'however well authenticated, or however defeated, is not sufficient,' " and that public policy does not demand that the killer's succession to the testator's property "should be avoided because of his criminal act, when the laws are silent. Public policy does not demand it, for the demands of public policy are satisfied by the proper execution of the laws and the punishment of the crime." Other courts have severely criticized the majority opinion in the *Riggs* case and the rule of the English courts. Among such authorities are: *Deem* v. *Millikin,* 6 Ohio C.C. 357, 359, aff'd, 53 Ohio St. 668, 44 N.E. 1134; *Shellenberger* v. *Ransom,* 41 Neb. 631, 641, 59 N.W. 935; *Wall* v. *Pfanschmidt,* 265 Ill. 180, 183, 193, 106 N.E. 785; *Box* v. *Lanier,* 112 Tenn. 393, 407, 79 S.W. 1042. The state of the authorities is thus well summarized: "There seems to be no escape on principle from the conclusion that at common law, and under the statutes and constitutions of the various states of the Union, courts are not warranted in disregarding the course of descent and distribution, or the conclusiveness of duly executed wills, to divert the succession from the murderers of ancestors or testators, and the authorities now strongly preponderate in this direction." 1 Woerner, American Law of Administration (3d Ed.), p. 188; note, 51 A.L.R. 1096.

As an alternative or supplemental claim, the plaintiffs urge that if the defendant Plunkett is not precluded from succeeding to the legal title under the principle of the *Riggs* case, he should be held to take the title as constructive trustee ex maleficio for the benefit of the plaintiffs. Several years after the *Riggs* case was decided, this theory was recognized by the New York court in *Ellerson* v. *Westcott*, 148 N.Y. 149, 154, 42 N.E. 540, as affording a method of equitable relief under such circumstances. The principle has been adopted in some other cases. *Van Alstyne* v. *Tuffy,* 103 Misc. 455, 458, 169 N.Y.S. 173; *Whitney* v. *Lott,* 134 N.J. Eq. 586, 591, 36 A.2d 888; *Bryant* v. *Bryant,* 193 N.C. 372, 379, 137 S.E. 188; *Garner* v. *Phillips,* 229 N.C. 160, 162, 47 S.E.2d 845. It has been rejected, however. *Welsh* v. *James,* 408 Ill. 18, 21, 95 N.E.2d 872. The latter case reaches the result in accord with the weight of authority discussed above, because the vice in the legal remedy is not cured by resort to equity. The net effect is the same and would still result in a disregard of the statutes of descent or devise and in adding a punishment for crime not provided by the legislature and partaking of attainder and forfeiture. Furthermore, in so far as the instant case is concerned, the lack of any allegation of intent on the part of Plunkett to kill for the purpose of obtaining his wife's property is sufficient to differentiate the case from *Dowd* v. *Tucker*, 41 Conn. 197, and *Buckingham* v. *Clark,* 61 Conn. 204, 23 A. 1085, cited by the plaintiffs in support of a claimed constructive trust. In each of those cases, the bequest had been obtained by an express representation that it would be applied for the benefit of the person claiming the constructive trust. The maxim that one should not be permitted to profit by his own wrong of itself is insufficient upon the facts

to entitle the plaintiffs to equitable relief. See *Davis* v. *Margolis,* 108 Conn. 645, 649, 144 A. 665; Restatement, Restitution § 187, comment e. The supplemental claim of the plaintiffs for relief on the ground of a constructive trust is unavailing, since they cannot prevail under the doctrine of the *Riggs* case.

As stated above, there was no statute similar to § 7062 involved in the decision of the *Riggs* case. These further cases, of many which could be cited, in addition to those mentioned in the second paragraph above, support the majority view that, in the absence of such a statute, a killer is not precluded from taking: *Hagan* v. *Cone,* 21 Ga. App. 416, 417, 94 S.E. 602; *Carpenter's Estate,* 170 Pa. 203, 208, 32 A. 637; *Crumley* v. *Hall,* 202 Ga. 588, 43 S.E.2d 646; *Welsh* v. *James,* 408 Ill. 18, 21, 95 N.E.2d 872; *Owens* v. *Owens,* 100 N.C. 240, 241, 6 S.E. 794; *Gollnik* v. *Mengel,* 112 Minn. 349, 351, 128 N.W. 292; *Eversole* v. *Eversole,* 169 Ky. 793, 795, 185 S.W. 487; see also Cleaveland, Hewitt & Clark, Probate Law & Practice, p. 807; 1 Woerner, American Law of Administration (3d Ed.) § 64a. These authorities make clear that judicial tribunals have no concern with the policy of legislation and that they cannot engraft upon the provisions of the statutes of descent and distribution an exception to bar one who feloniously kills his benefactor from succeeding to the latter's property. A number of cases which accord in result with those adopting the doctrine of the *Riggs* case are concerned with contract rights as distinguished from statutory rights and when properly analyzed may be harmonized with decisions supporting the majority view. This is well illustrated by a comparison of two Ohio cases. In *Filmore* v. *Metropolitan Life Ins. Co.,* 82 Ohio St. 208, 92 N.E. 26, a husband who was

the beneficiary under a policy insuring his wife's life and who had been convicted of killing her was denied recovery. In *Deem* v. *Millikin,* 6 Ohio C.C. 357, 359, aff'd, 53 Ohio St. 668, 44 N.E. 1134, it was held that a murderer was not barred from inheriting from his victim. Thus, the killer was barred by his felonious act in the former but not in the latter. The same holds true of two Pennsylvania cases, *Green* v. *Metropolitan Life Ins. Co.,* 23 Pa. Dist. 574, and *Carpenter's Estate,* 170 Pa. 203, 32 A. 637. See note, 70 A.L.R. 1539, 1541. See also *Murchison* v. *Murchison,* (Tex.Civ.App.) 203 S.W. 423, where a wife who had killed her husband and was denied recovery as the beneficiary under a policy of insurance on his life was, as his sole heir, awarded the proceeds of the policy after they had been paid into his estate. In life insurance cases the usual equitable principles and the law pertaining to fraud are applied to contract rights. These principles are not, however, applied in cases involving succession to property by inheritance or devise. The distinction lies in the fact that in the former cases the result may be reached without violating the statutes of descent.

The plaintiffs seek to distinguish the majority rule as one relating to intestate but not to testate estates. The suggestion is made that this is so since laws governing intestacy are purely statutory, while the rules controlling wills are subject to judicial control. This hardly constitutes a sound basis for distinction, for, as was pointed out earlier in this opinion, descent of the decedent's property in this case would be fully dependent upon the statutory provisions mentioned, whether it was testate or intestate. As Dean Ames has stated in discussing the *Riggs* case, "In the case of the devise, if the legal title did not pass to the devisee, it must be because the testator's will

was revoked by the crime of his grandson. But when the legislature has enacted that no will shall be revoked except in certain specified modes, by what right can the court declare a will revoked by some other mode? In the case of inheritance, surely, the court cannot lawfully say that the title does not descend, when the statute, the supreme law, says that it shall descend." Ames, Lectures on Legal History, p. 312.

After full consideration of the reasons advanced by counsel and those contained in the many authorities which have been cited, it is our conclusion that, at the time when § 7062 was originally adopted as § 1316i of the 1947 Supplement to the General Statutes, the right of a surviving husband who had killed his wife to succeed to the latter's property was dependent solely upon the application of the provisions of either the statutes as to wills or the statutes as to succession, as the case might be, unaffected by any such rule of the common law as is claimed by the plaintiffs. The effect of the adoption of § 7062 is the remaining question. The conclusion just stated leaves little force to the plaintiffs' principal argument in support of the construction of § 7062 for which they contend. It limits the question of interpretation simply to a determination of the effect to be accorded this section as an amendment of the statutes concerning wills and succession referred to above. As so viewed, its wording is so clear and free from ambiguity as to leave little room for doubt as to its meaning. In so far as applicable to the facts of the instant case, it simply states that "[n]o person finally adjudged guilty . . . of murder in the first or second degree shall be entitled to inherit or take any part" of the property "of the person killed," either by virtue of any succession statute or under

the will of such person. When § 7062 is read in connection with the other statutes to which reference has been made, the plaintiffs' suggestion that one convicted of "manslaughter" of the testatrix and not "murder" is by its terms barred from taking under her will is without merit.

The language of § 7062 is so plain that we merely mention certain factors which confirm the fact that it means just what it says. Similar statutes have been enacted in a large number of states, apparently because of a general opinion that otherwise inheritance under statute or devise could not be barred to one guilty of killing his benefactor. These statutes have been strictly construed as penal statutes and the prohibition held to extend no further than the crimes named and the estates delineated. We mention but a few of the many cases so holding. *Estate of Kirby,* 162 Cal. 91, 92, 121 P. 370; *Tarlo's Estate,* 315 Pa. 321, 324, 172 A. 139; *Harrison* v. *Moncravie,* 264 F. 776, 784; *Blanks* v. *Jiggetts,* 192 Va. 337, 342, 64 S.E.2d 809; *Hogg* v. *Whitham,* 120 Kan. 341, 342, 242 P. 1021; *In re Estate of Emerson,* 191 Iowa 901, 906, 183 N.W. 327; *Wenker* v. *Landon,* 161 Ore. 265, 271, 88 P. 2d 971; *Smith* v. *Greenburg,* 121 Colo. 417, 422, 218 P.2d 514; *Strickland* v. *Wysowatcky,* (Colo.) 250 P.2d 199. Only three decisions have been brought to our attention where, under such a statute, the plaintiffs' interpretation is sustained: *Garner* v. *Phillips,* 229 N.C. 160, 162, 47 S.E.2d 845; *Smith* v. *Todd,* 155 S.C. 323, 336, 152 S.E. 506; *Metropolitan Life Ins. Co.* v. *Hill,* 115 W.Va. 515, 518, 177 S.E. 188. The last two of these are life insurance cases.

A final cogent fact indicative that the legislature's intent in adopting § 7062 was not to exclude other than "convicted murderers" from taking appears from a colloquy in the house of representatives.

When the bill was proposed for passage, a member asked whether under it, if one feloniously killed his benefactor and committed suicide before he was convicted of the crime, his estate could inherit. The chairman of the committee presenting the bill stated in reply: "Mr. Speaker, it would seem to me that is clearly set forth in the bill. The slayer must first have been found guilty. That particular point is covered. Under this bill the intent is to cover a situation where the felonious slayer has been found guilty. The provisions of the law would not become operative until the person's guilt had been established. The situation which the gentleman from Old Lyme has mentioned would not come under the provisions of this bill." Conn. H. Proc., 1947 Sess., H.B. 64 (May 26, 1947). We take judicial notice of this transcript of the legislative proceedings. See *General Hospital Society* v. *New Haven County,* 127 Conn. 53, 59, 14 A.2d 746; *Institute of Living* v. *Hartford,* 133 Conn. 258, 265, 50 A.2d 822. The chairman's statement was in the nature of a supplemental report to the legislature and, like a committee report, may properly be considered as an aid to the determination of the legislative intent. 2 Sutherland, Statutory Construction (3d Ed.), p. 502; *Connecticut Rural Roads Improvement Assn.* v. *Hurley,* 124 Conn. 20, 26, 197 A. 90. Section 7062 does not preclude a felonious killer of his benefactor, who is his wife, from succeeding to her property, whether by will or under the succession statute, unless he has been convicted of either first or second degree murder.

Inasmuch as all the facts alleged in the complaint as amended stood admitted upon the demurrer, the case presented a pure question of law for determination. Since the prayers for relief, predicated upon

these facts, sought not only a declaratory judgment but also affirmative and coercive relief, the demurrer was properly addressed to the complaint on the ground stated. *Hill* v. *Wright,* 128 Conn. 12, 16, 20 A.2d 388.

There is no error.

In this opinion JENNINGS and INGLIS, Js., concurred.

O'SULLIVAN, J. (concurring). Since the General Assembly has now determined our public policy respecting inheritance by unlawful homicide, I can concur in the result reached by my colleagues. Such inheritance is prohibited, under the limitations set by legislative enactment, only when the homicide amounts to murder and only when the would-be inheritor has been convicted of that crime. General Statutes § 7062. I disagree, however, with that part of the opinion which holds that, prior to the passage of the statute in 1947 (Sup. 1947, § 1316i), the common law of Connecticut permitted a murderer to take from his victim by will or descent. A majority of my brethren take the position that, in spite of its repulsiveness, inheritance by murder was legally justified before 1947 because, they say, its prevention would have required the court to nullify the statute of wills and the statute of descent and distribution. This reasoning, it seems to me, is faulty. Equity offers a method which will result in nullifying neither statute. Under that method, both statutes are permitted to operate. By resort to equity, however, the property passing to the murderer would be impressed with a constructive trust for the benefit of those who, in case of testacy, would have been entitled to the property on the death of the testator if the devise or bequest to the mur-

derer had been revoked, or for the benefit of those who, in case of intestacy, would have been the heirs or next of kin of the intestate if the murderer had predeceased him. Restatement, Restitution § 187; *Colton* v. *Wade,* (Del. Ch.) 80 A.2d 923, 925; *Vesey* v. *Vesey,* (Minn.) 54 N.W.2d 385, 388; *Whitney* v. *Lott,* 134 N.J. Eq. 586, 590, 36 A.2d 888; *Riggs* v. *Palmer,* 115 N.Y. 506, 511, 22 N.E. 188; *Bryant* v. *Bryant,* 193 N.C. 372, 377, 137 S.E. 188; Ames, Lectures on Legal History, p. 310; 3 Bogert, Trusts, § 478, p. 50; 4 Pomeroy, Equity Jurisprudence (5th Ed.) § 1054d; 3 Scott, Trusts, § 492; note, 51 A.L.R. 1096, 1098. I refuse to concede that equity would permit a person to profit from such an atrocious act as murder.

In this opinion BALDWIN, J., concurred.