### WARREN LANE *v.* JOHN F. HARDER, WELFARE COMMISSIONER

#### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 17-703-8277

Argued October 5—decided November 6, 1970

*Robert K. Killian,* attorney general, and *Edward F. Pasiecznik,* assistant attorney general, for the appellant (defendant).

*David P. Kelley,* of Southington, for the appellee (plaintiff).

DiCENZO, J.   The parties agreed that the trial court would decide the case on the pleadings and briefs filed.   The essential facts are not in dispute. The plaintiff is a patient in a convalescent home. He is the owner of a note and mortgage, payable to

him, on which there is due the amount of $12,754.97, payable at the rate of $98.84 per month. The note and mortgage bear interest at 4 percent per annum. The plaintiff is indebted to the convalescent home in the sum of $1800. He applied to the welfare department for medical assistance and offered to assign his mortgage note and mortgage to the welfare commissioner. The district office of the welfare department denied the application on the ground that his resources were in excess of the department limits. He requested a fair hearing as provided in §§ 17-2a and 17-2b of the General Statutes, and, following this hearing, the official designated to hold fair hearings upheld the denial of the plaintiff's application by the district office. The welfare commissioner entered the denial order, and an appeal therefrom was taken to the Circuit Court. The trial court set aside the denial and ordered the commissioner to provide medical assistance on receiving an assignment of the plaintiff's mortgage and note. The court, in its finding, concluded that the commissioner abused his discretion, in the administration of § 17-114 of the General Statutes, in denying assistance to the plaintiff.

The thrust of the assignment of errors before us is twofold. Error is assigned in the trial court's conclusions that the primary legislative intent was to provide assistance, and not to deny assistance, when an applicant stands ready to divest himself by assignment of his assets. Secondly, error is assigned in the court's conclusion that the welfare commissioner abused his discretion in denying assistance to the plaintiff.

There was no attempt to correct the finding by either party, and therefore our examination of the issues must necessarily be limited by the record before us.

As to the first assignment, it cannot be doubted that public assistance in a variety of circumstances and under certain conditions was the general intention of the legislature in enacting chapter 302 of the General Statutes, entitled "Public Assistance"; nevertheless, there is nothing in the trial court's finding of subordinate facts which supports its bare conclusion that the primary legislative intent of § 17-114 of that chapter was to provide assistance. No statement or colloquy in the legislature concerning § 17-114 was put in evidence, nor was any transcript of legislative proceedings offered, as was the case in *Bird* v. *Plunkett,* 139 Conn. 491, 504; see *Lee* v. *Lee,* 145 Conn. 355, 358.

Section 17-114 of the General Statutes is a part of chapter 302, which is divided into four parts regulating (1) eligibility, (2) hearings, (3) aid to dependent children, aged, blind and totally disabled, and (4) financial eligibility based on federal law. An examination of chapter 302 clearly demonstrates that although one may be entitled public assistance, there are a number of definitions, qualifications, investigative procedures, and degrees of eligibility, as well as many other classifications and related requirements, to be considered before assistance is provided. There is substantial merit to this assignment.

The second assignment of errors relates to the commissioner's discretion. Section 17-2 gives the commissioner authority to make such regulations as are necessary to enable him to administer any program or to fulfil any responsibility with which he is charged by law. Section 17-109 provides, inter alia, that to be eligible one must not have sufficient means to support himself on a reasonable standard of health and decency and must not have any spouse, child or children able so to support him. Section 17-114 provides in part: "Said commissioner may, in his discretion, accept as eligible for public assist-

ance any person otherwise qualified who has personal property or interest in personal property in excess of six hundred dollars upon assignment or transfer to said commissioner of all such personal property or interest in personal property . . . ." These sections are to be read together, and the key phrase is "in his discretion."

The record in the instant case fails to disclose any indication that the regulations of the welfare commissioner are not generally complied with. There is nothing in the record or the court's finding and conclusions to indicate that the policies of the welfare commissioner are not applied to all petitioners equally. There is nothing in the record or the finding and conclusions to indicate that any of the commissioner's regulations or policies are illegal.

The appeal to the Circuit Court was taken pursuant to § 17-2b of the General Statutes. In *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 459, the court stated: "Where the action of an administrative body involves only a purely administrative matter, the court, on a statutory appeal from such a body, has before it only the question, if properly raised, whether the body has acted illegally or has exceeded or abused its powers; otherwise the action of an administrative body involving only an administrative matter, is to be accepted as final. The question whether such a body has acted illegally or has exceeded or abused its powers, would involve such questions, among others, as whether its action was beyond its statutory powers, or was beyond its jurisdiction, or whether it had acted arbitrarily as without notice and due hearing." There is nothing in the subordinate facts found by the trial court in the instant case which could logically support any such conclusions. The administrative responsibilities of the welfare commissioner are so many and so varied, applying to so many different classes of persons

seeking public assistance, that of necessity the discretion vested in him must be broad and large. "The court cannot substitute its judgment for that of the commissioner." *Hunt* v. *Shapiro,* 5 Conn. Cir. Ct. 505, 506; see *Romano* v. *Connecticut State Welfare Dept.,* 4 Conn. Cir. Ct. 138; *Ouellet* v. *Shapiro,* 3 Conn. Cir. Ct. 268. In a recent case involving the validity of a method used by Maryland in the administration of an aspect of its public welfare program, the closing paragraph of the majority opinion of the United States Supreme Court points up the many reasons why courts should move very carefully in looking over the shoulders of state officials charged with the responsibility of administering welfare programs. *Dandridge* v. *Williams,* 397 U.S. 471, 487. The court said: "We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration . . . . But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." There is validity to the second assignment of error.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion DEARINGTON and KINMONTH, Js., concurred.