THE HOUSING AUTHORITY OF THE CITY OF WATERBURY ET AL. *v.* HENRY WHITE, WELFARE COMMISSIONER

COURT OF COMMON PLEAS     JUDICIAL DISTRICT OF WATERBURY
FILE No. 25214

Memorandum filed December 21, 1971

*Francis J. Grady,* of Waterbury, and *William J. Lavery,* of Bridgeport, for the plaintiffs.

*Robert K. Killian,* attorney general, and *Michael A. Arcari,* assistant attorney general, for the defendant.

SPONZO, J. The plaintiff Housing Authority of the city of Waterbury instituted this action, in which it claimed a declaratory judgment, a restraining order, and other equitable relief. Immediately prior to the commencement of the trial, the Housing Authority of the city of Bridgeport and the Housing Authority of the city of New Haven moved to be joined as party plaintiffs. This motion was granted without objection by the defendant. During the course of the trial the plaintiffs moved to amend their complaint on the ground that they wished to change their primary prayer for relief from a declaratory judgment to an order of mandamus. This motion was also granted without objection by the defendant.

In 1969, § 17-2f of the General Statutes (Public Act No. 299) was enacted into law. This section permits the landlord of welfare recipients to obligate the welfare commissioner to make direct rental pay-

ments provided the landlord complies with certain provisions of the law. The 1971 General Assembly amended this statute by adding subsection (c), which reads as follows: "The provisions of this act shall include only direct payments made to landlords of recipients of public assistance when the total of such payments and all other vendor and protective payments to such recipients made by the state welfare department do not exceed matching payments under federal law." This amendment became effective on October 1, 1971. It is known as Public Act No. 808. As the result of the passage of this act, the defendant notified the plaintiffs in September, 1971, to the effect that commencing October 1, 1971, no further rental payments would be made directly to landlords. The plaintiffs instituted this action to compel the defendant to comply with the provisions of § 17-2f as amended.

The issue to be resolved in this case is the meaning of "matching payments under federal law," as used in Public Act No. 808. In order to understand these words, it is necessary to review the operation and policy of the state welfare department to a limited extent. The total budget of this department for the fiscal year ending June 30, 1971, was approximately $246,000,000. During the same year the state of Connecticut received from the federal government matching funds of approximately $110,000,000 or about 46 percent of the total welfare budget. During the same fiscal year, the state welfare department made protective and vendor payments in the amount of approximately $8,000,000 and direct payments to landlords in compliance with Public Acts 1969, No. 299, in the amount of $2,800,000.

Section 17-11 of the General Statutes empowers the defendant to take whatever steps are necessary to receive federal matching funds. After passage of Public Act No. 299 in 1969, the defendant inquired

of the federal authorities whether the state could receive federal matching funds for rental payments made directly to landlords pursuant to Public Act No. 299. The answer was an unequivocal no. The federal authorities cited § 234.60 of title 45 of the Code of Federal Regulations, pertaining to the Social Security Act. This section concerns protective and vendor payments for dependent children. Under this section, payments may be made to designated payees where relatives of dependent children have demonstrated such an inability to manage funds that payments to the relatives have not been or are not currently being used in the best interest of the child. In order to obtain federal financial participation or matching funds under § 234.60, states must strictly comply with the criteria set forth in that section. One specific condition is that a landlord cannot be a protective payee, that is, cannot receive rent on behalf of a welfare recipient directly from the welfare department as required by Public Act No. 299. Another condition is that the number of recipients for whom protective payments are made cannot exceed 10 percent of all other recipients, in any given month, of aid to families with dependent children. Accordingly, because of the provisions of Public Act No. 299, the state of Connecticut cannot qualify for federal matching funds and loses approximately 46 percent of all direct rental payments made to landlords.

In interpreting Public Act No. 808, the plaintiffs urge the court to construe the term "matching payments under federal law" to mean total matching funds received by the state, or in the case of the fiscal year ending June 30, 1971, the sum of $110,000,000. The defendant urges the court to limit this term to mean matching funds only with respect to the total protective and vendor payments and direct rental payments to landlords.

It is a cardinal rule that statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself if the language is plain and unambiguous; otherwise, by considering the statute in the light of all of its provisions, the object which it seeks to accomplish, the preexisting legislation upon the same subject matter, and all other relevant circumstances. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447. There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law. *Little* v. *Ives,* 158 Conn. 452, 455.

If the contention of the plaintiffs is adopted, the enactment of Public Act No. 808 would be meaningless because it is inconceivable how it would affect the operation of Public Act No. 299. On the other hand, if the contention of the defendant is adopted, the enactment of Public Act No. 808 would hardly give any effect to Public Act No. 299, and under the present circumstances it is difficult to envision any case under which a landlord could ask for a direct rental payment from the defendant. Accordingly, the meaning of Public Act No. 808 is not quite clear and is somewhat ambiguous.

It, therefore, becomes necessary to ascertain the object which the statute seeks to accomplish and all other relevant circumstances. At the beginning of the 1971 session of the legislature, the welfare department submitted many bills, one of which called for repeal of Public Act No. 299. For some unknown reason this bill became lost and received absolutely no consideration by the legislature. During this session of the legislature, house bill 7048 was introduced and referred to the judiciary committee of the legislature. This bill generally provided for payment of past rent to the landlords directly from the

welfare commissioner. When information concerning this bill came to the attention of the defendant, he personally intervened and wrote directly to a senate member of the judiciary committee, pointing out the devastating effect of such a bill and also requesting an outright repeal of Public Act No. 299. The result was that substitute house bill 7048 was introduced, and this called for outright repeal of Public Act No. 299. The welfare department was advised by a member of the judiciary committee that a repeal of Public Act No. 299 was not probable, but a rewording of the bill was suggested. The bill was redrafted by members of the welfare department as well as an attorney assigned to the legislature.

The newly drafted bill was then presented on the floor of the house. When the speaker of the house requested remarks on the bill, Representative Thomas Dooley stated, "Now the bill that's in the file was requested by the welfare department. . . . Again, Mr. Speaker, I think it's important to note that this is requested by the welfare department. It's in the best interest of not only the people of the state of Connecticut but . . . the recipients themselves, and I would urge the adoption of the amendment." While such statements could not control unequivocal language to the contrary, they are, under the circumstances of this case, strong indications of the legislative intent. *Sullivan* v. *Town Council,* 143 Conn. 280, 286. The statement was in the nature of a supplemental report and, like a committee report, may properly be considered as an aid to the determination of the legislative intent. *Lee* v. *Lee,* 145 Conn. 355, 358; *Bird* v. *Plunkett,* 139 Conn. 491, 504.

It seems quite clear to the court that the sole interest of the welfare department was the repeal of Public Act No. 299 because of the loss of federal matching funds and because of additional administrative costs. In Public Act No. 299, there are three

parties in interest, namely, the state of Connecticut, the welfare recipient, and the landlord. In the remarks of Representative Dooley, he indicated that the house was considering only the interests of the state of Connecticut and the welfare recipient. In Public Act No. 808, the word "only" is used, and that indicates to the court that Public Act No. 808 was intended to limit or restrict the provisions of Public Act No. 299.

It is interesting to note that in a statement of purpose in connection with substitute house bill 7048 it was stated that Public Act No. 299 was costing the state hundreds of thousands of dollars because no federal matching was available. Also, it was indicated that the paper work involved was a distinct deterrent to the efficient administration of the welfare department.

Accordingly, for the foregoing reasons, the issues are found in favor of the defendant. Consequently, the prayer for a permanent injunction and mandamus is denied. The temporary injunction issued by this court on September 29, 1971, is hereby terminated.