F. GEORGE BROWN, TAX COMMISSIONER *v.* HARRY G. WIBERG, JR., ADMINISTRATOR (ESTATE OF EVELYN H. WIBERG), ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE NO. 131816

Memorandum filed January 21, 1975

*Robert K. Killian,* attorney general, and *Morris Klein,* inheritance tax attorney, for the plaintiff.

*Wiggin & Dana,* of New Haven, for the defendant.

GRILLO, J. This litigation emanates from the denial by the Probate Court for the district of North Haven of the claim of the plaintiff commissioner that the right of the defendant's decedent, Evelyn

H. Wiberg, to invade the principal of the trust established under the will of her late husband, Harry G. Wiberg, rendered the assets of that trust taxable in her gross estate by virtue of § 12-345a of the General Statutes.[1] It is contended by the commissioner that the testamentary direction created a general power of appointment, thus making taxable the trust assets. The defendant administrator maintains that if a power of appointment was created, it was special, and, since that power had not been exercised, the trust assets are insulated from taxation. The commissioner resists the assertion that a special power of appointment was created although he concedes that a special power of appointment, if not exercised, would not render the assets taxable.

[1] "Sec. 12-345a. TAXATION OF PROPERTY TRANSFERRED BY EXERCISE OR NONEXERCISE OF A POWER OF APPOINTMENT. (a) For the purpose of this section, the term 'power of appointment' means any power to appoint exercisable by any person, corporation or association, either alone or in conjunction with any other person, corporation or association, except a power to appoint within a class which excludes the donee of the power and is restricted to the husband, wife and issue of the donor of the power; provided this exception shall not include any power to appoint, whether exercised or not, under which another power to appoint may be created. As used in this section the term 'issue' shall include adopted children. (b) Every transfer of property which, if from a resident or nonresident of this state, would be subject to tax imposed and be taxable under this chapter and which occurs after January 1, 1970, as a result of (1) the exercise of a general or special power of appointment, or (2) the omission or failure to exercise in whole or in part such a general power of appointment, shall be taxable under this chapter in the same manner and to the same extent as if such property had belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. Nothing contained herein shall be deemed to relieve from taxation, under this chapter, in the estate of the donor of a general or special power of appointment, the transfer of the property subject to such power." (Public Acts 1969, No. 796, effective Jan. 1, 1970, and applicable "to estates of persons dying on or after that date." Repealed as of Jan. 1, 1972, except that "[a]ll estates of persons dying before January 1, 1972 shall be subject to the succession tax laws applicable to them prior to January 1, 1972." Public Acts 1972, No. 290, §§ 5, 6).

The decedent, Evelyn H. Wiberg, died on June 7, 1971, domiciled in the town of North Haven. Her estate is being probated in the Probate Court for the district of North Haven.

The will of Mrs. Wiberg's husband, Harry G. Wiberg, who predeceased her, established a trust under which the net income was to be paid to Mrs. Wiberg during her life. The trust contained the following additional provisions: "[I]n connection with the principal of said trust, I give to my said wife the right to invade said principal of said trust to the extent she shall consider necessary for her comfort, support and maintenance, even though invasion shall use or exhaust the whole of said trust fund. In the event that my wife shall desire to invade said principal, at any time, she shall direct my said Trustee, in writing, as to the amount of such invasion and my said Trustee shall carry out her instructions by paying over to her, or at her direction, the amount of such invasion of such trust fund."

The commissioner contends that § 12-345b of the General Statutes[2] controls the construction of its predecessor statute § 12-345a. He insists that § 12-345a, the statute applicable to the estate in question, was not passed in a vacuum and that the

_____

[2] "Sec. 12-345b. TAXATION OF PROPERTY TRANSFERRED BY EXERCISE OR NONEXERCISE OF POWER OF APPOINTMENT: DEFINITIONS. As used in sections 12-345b to 12-345e, inclusive, the term 'general power of appointment' means a power, whether created before or after May 24, 1972, which is exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate, except that (a) a power to consume, invade or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent shall not be deemed a general power of appointment; . . . ." (Public Acts 1972, No. 290, § 4, effective May 24, 1972, and retroactive to Jan. 1, 1972. "All estates of persons dying before January 1, 1972 shall be subject to the succession tax laws applicable to them prior to January 1, 1972 and such laws are continued in force for that purpose." Id. § 6.)

drafters of the statute were, undoubtedly, well aware of the definition of the terms "general power of appointment" and "special power of appointment" as found in the Internal Revenue Code of 1954. The Internal Revenue Code, insofar as pertinent to the present inquiry, provides: "The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that— (A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment." Int. Rev. Code of 1954, § 2041 (b) (1) (A). The commissioner's argument is as follows: The legislature was aware of the federal Internal Revenue Code when § 12-345a was passed. That body then proceeded at a subsequent session of the legislature to enact § 12-345b. The latter statute adopts language defining a general power of appointment, and, for a power of appointment not to be considered general, it must be one "which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent." The commissioner points out that that language is identical with the language of the Internal Revenue Code and therefore § 12-345b is merely a clarification of § 12-345a. He argues, in effect, that, in passing § 12-345a, the intent of the legislature was that, for a power of appointment not to be considered a general power of appointment, the documents setting up the power of appointment must contain language expressing "an ascertainable standard related to the health, education, support or maintenance of the decedent." The commissioner insists that the provisions of Harry G. Wiberg's will relative to the invasion of the corpus of the trust did not set forth an ascer-

tainable standard and were so broad and unlimited that they must be considered a general power of appointment.

For the court to accept the proposition advanced above, it would have to conclude that the "ascertainable standard requirement" of § 12-345b is applicable to estates existing prior to January 1, 1972. Further, this court has taken judicial notice of the legislative proceedings resulting in the passage of § 12-345b. *Bird* v. *Plunkett,* 139 Conn. 491, 504. In proposing the passage of that legislation, a member of the General Assembly stated: "It is a very minimal financial impact on the taxation of special powers of appointment and will make the state rules on general powers of appointment to conform to the federal rules." 15 H.R. Proc., pt. 7, 1972 Sess., p. 2556. It is clear, therefore, that when § 12-345a was passed, it was not intended to conform to the provisions of the federal law. To determine the legislative intent, we consider not what the legislature meant to say but what it did say. It is a cardinal rule that taxing statutes are to be strictly construed against the state and that reasonable doubt as to their meaning should be resolved in favor of the taxpayer. *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 582. It was not until § 12-345b was passed that the "ascertainable standard requirement" aspect of powers of appointment went into effect, and not until then did the state standard conform to the federal standard. The later statute was not a clarification of the previous statute. Indeed, § 12-345b expressly states that its retroactivity did not relate to estates of persons who died prior to January 1, 1972.

This court concludes that a definition as to the distinction between a general and special power of appointment insofar as the phraseology of § 12-345a is concerned is nonexistent.

Having concluded that § 12-345a gives no guidance referable to the distinction between a general and special power of appointment, this court is obliged to peruse the entire will and ascertain the intent of the testator, Harry G. Wiberg. The cardinal rule to be followed in construing the will of the testator is to find and effectuate his intent, as disclosed by what he said in the will. The court therefore looks to the will itself. The court examines the words and language used and studies the will in its entirety. The quest is to determine the meaning of what the testator said and not to speculate on what he meant to say. *Kimberly* v. *New Haven Bank N.B.A.*, 144 Conn. 107, 113. Mrs. Wiberg was given the right to the interest of the trust without qualification. As to the principal of the trust, however, her right to invade was limited to the requirement that it be for her comfort, support, and maintenance to the extent that she shall consider it necessary. The will of Mr. Wiberg indicates that he was meticulous in his concern that the estate be handled wisely. It indicates that he was desirous that the trust corpus not be diluted needlessly in order that the interest of both Mrs. Wiberg and the remaindermen would not be jeopardized. That concern conflicts with the claim that Mrs. Wiberg had the power to deplete the estate in any way that she wished.

With regard to the powers of the trustee, the testator used such phrases and clauses as "without restriction or limitation," "in its sole discretion," "as my said trustee may deem advisable," "as the trustee may deem proper," and "as my trustee may deem fair and equitable." If the testator had desired Mrs. Wiberg to have sweeping power and unrestrained rights of invasion relative to the principal of the trust, he certainly could have used

the same broad language. He was not unfamiliar with legalistic terms that would have given her unlimited power. That he failed to do.

It is interesting to note also that it was the testator's desire that the so-called widow's allowance be used for assisting the decedent in her maintenance and support. That was another limitation with reference to the use of the estate's assets.

Furthermore, even assuming that the "ascertainable standard" criterion was applicable to the trust in question, that standard was met by the right to invade the corpus, if necessary, for Mrs. Wiberg's comfort, maintenance, and support. That provision set forth a limited standard. It allowed the life tenant the use of the principal only for what was reasonable, taking into account her age, physical condition, her station in life, and all the circumstances. *Pittsfield National Bank* v. *United States*, 181 F. Sup. 851, 853.

The commissioner has failed to sustain his burden of proving that a general power of appointment was created by the trust provisions of the will.

The appeal is dismissed.